## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| LKQ CORPORATION, and KEYSTONE AUTOMOTIVE INDUSTRIES, INC., | ) ) ) ) | Case No. 1:20-cv-2753 |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | **JURY TRIAL DEMANDED** |
| GENERAL MOTORS COMPANY, and GM GLOBAL TECHNOLOGY OPERATIONS, LLC, | ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT NON-INFRINGEMENT AND INVALIDITY

Plaintiffs LKQ Corporation and Keystone Automotive Industries, Inc. ("LKQ" or "Plaintiffs"), by its attorneys Irwin IP LLC, seek declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 against Defendants General Motors Company ("GMC") and GM Global Technology Operations, LLC ("GM Global") (collectively "GM" or "Defendants") and allege as follows:

## PARTIES

1.      Plaintiff LKQ Corporation is a corporation organized and existing under the laws of the State of Delaware with its corporate office located at 500 W. Madison Street, Suite 2800, Chicago, Illinois 60661.  LKQ Corporation by and through its subsidiaries import and sell, among other items, commercially successful automotive replacement and repair parts throughout the United States and in this District.

2.      Plaintiff Keystone Automotive Industries, Inc. is a corporation organized and existing under the laws of the State of Delaware with its corporate office located at 500 W. Madison Street, Suite 2800, Chicago, Illinois 60661.  Keystone is a subsidiary of LKQ Corporation

and distributes aftermarket automotive replacement parts throughout the United States and in this District.

3.     Defendant GMC is a corporation organized and existing under the laws of the State of Delaware with its corporate office located at 300 Renaissance Ctr., Detroit, MI 48243.  GMC manufactures and distributes vehicles and vehicle parts throughout the United States and in this District.

4.     Defendant GM Global is a subsidiary of Defendant GMC, organized and existing under the laws of the State of Delaware with its offices located at 300 Renaissance Ctr., Detroit, MI 48243.  On information and belief, Defendant GM Global conducts research and development for parent GMC.  GM Global is the assignee for design patents at issue in this proceeding.

## NATURE OF THE ACTION

5.     This is a declaratory judgment action seeking a determination that LKQ does not infringe U.S. Patent Nos. D818,903 (the "'903 Patent"), D803,731 (the "'731 Patent"), and D812,532 (the "'532 Patent"); and further that the '532 Patent and U.S. Patent Nos. D786,743 (the "'743 Patent"); D824825 (the "'825 Patent"); and D840,285 (the "'285 Patent") are invalid as anticipated or obvious over the prior art and purport to cover unpatentable subject matter. Collectively, the '903 Patent and the '731 Patent are referred to hereinafter as the Licensed GM Design Patents, and the '903 Patent, the'731 Patent, the '532 Patent, the '743 Patent, the '825 Patent, and the '285 Patent are referred to hereinafter as the GM Design Patents At Issue.

6.     This action arises from, on information and belief, affirmative measures taken by GM to interfere with LKQ's business operations by asserting that vehicle parts distributed by LKQ infringe the GM Design Patents At Issue, despite knowing that it has licensed LKQ to sell parts

covered the Licensed GM Design Patents, the fact that the '731 Patent is not infringed by the allegedly infringing part, and the remaining GM Design Patents At Issue are invalid in light of the prior art and are drawn to unpatentable subject matter.

## JURISDICTION AND VENUE

7.     The Court has subject matter jurisdiction over this action and the matters pleaded herein under 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, and the Patent Act of the United States, 35 U.S.C. § 101, *et seq*.

8.     This Court has personal jurisdiction over Defendants because, on information and belief, Defendants have continuous and systematic contacts with the state of Illinois and this Judicial District, have affirmatively directed infringement accusations at LKQ in this Judicial District and communicated such accusations to third parties in the Judicial District, and Defendants' submission to personal jurisdiction would be fair and reasonable.

9.     Venue against Defendants is proper because a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District and Defendants are subject to personal jurisdiction in this Judicial district.  28 U.S.C. § 1391(b)(2) and (3).

## STANDING

10.     For many decades, LKQ and its predecessors, and others in a vast aftermarket parts industry, have been importing and offering for sale replacement automotive parts including grilles, fenders, bumpers, and more.

11.     LKQ products are of a consistently high quality; LKQ carefully monitors its parts production with the objective that all replacement parts meet or exceed the quality of the OEM

part it replaces. Due to its long-standing presence in the aftermarket industry and its reputation for quality, LKQ has become a national leader among replacement part providers.

12. GM and LKQ have historically been parties to a confidential Design Patent License Agreement ("DPLA") under which LKQ was granted a license to many of GM's design patents. LKQ continues to operate in accordance with the DPLA, including paying royalties for parts covered by the Licensed GM Design Patents.

13. Where the relationship between the parties was once amicable, GM stopped acting in accordance with the expectations of the parties when they entered into the DPLA, and the course of conduct in the years immediately after entering into the DPLA.

14. In the middle of the licensing period, GM also issued a unilateral demand to alter the terms of the DPLA.

15. Further, notwithstanding the fact that GM and LKQ were in the midst of direct negotiations regarding a revised DPLA, in an effort to undermine LKQ's business relationships and pressure LKQ into agreeing to unfair licensing terms, GM sent correspondence to a third party making baseless allegations that certain automotive parts sold by LKQ and listed on the third party's vehicle part platform—Certified Collateral Corporation's ("CCC") platform—infringed certain GM design patents.

16. Specifically, on March 1, 2019, GM's Counsel, Angela Caligiuri, sent a letter to CCC identifying certain replacement parts it alleged infringed approximately 250 different GM design patents, including parts sold by LKQ. GM requested that the identified parts be removed from CCC's software platform. *See* Exhibit A ("March 2019 GM Letter").

4

17.     Despite GM claiming that no aftermarket supplier, including LKQ, was permitted to manufacture the parts identified in the March 2019 GM Letter, LKQ was indeed licensed to make allegedly infringing parts.

18.     After obtaining a copy of the March 2019 GM Letter, LKQ contacted GM and discussed with GM that, to the extent it was making allegedly infringing parts, it was licensed to make the allegedly infringing parts and that it had been paying royalties under the DPLA for such parts.

19.     Thereafter, on information and belief, in December of 2019, GM provided a PowerPoint presentation to CCC again outlining parts that were allegedly subject to protection under the GM Design Patents At Issue and that should not be included in CCC's systems.  In other words, GM asserted that such parts offered by LKQ were infringing its patents.  Notably, upon information and belief and based upon the assumption that CCC's subsequent request that LKQ remove certain parts (discussed below) included all parts alleged by GM to be infringing at that time in March 2020, only four of the approximately 250 patents originally asserted by GM in the March 2019 assertion were included in GM's latest assertion.

20.     On March 4, 2020, CCC sent a letter to LKQ requesting that LKQ remove certain parts allegedly covered by the GM Design Patents At Issue from CCC's platform.  *See* Exhibit B ("March 2020 CCC Letter").  Specifically, CCC directed LKQ to "provide specifics that can be shared with GM or contact General Motors directly."  *Id.* at 1.

21.     The March 2020 CCC Letter included two patents that GM has licensed LKQ via the DPLA, specifically the GM Licensed Design Patents.

22.     On information and belief, it was GM who caused and/or directed CCC to request LKQ remove the identified products.

5

23.     LKQ does not infringe the '903 Patent, the '731 Patent, or the '532 Patent.  Further,

the '532 Patent, '743 Patent, '825 Patent, and '285 Patent are invalid as anticipated or obvious

over the prior art, and purport to cover unpatentable subject matter.

24.     By virtue of the foregoing, a substantial controversy exists between the parties that

is of sufficient immediacy and concreteness to warrant declaratory relief.

## GENERAL ALLEGATIONS

25.     The March 2020 CCC Letter identified a number of automotive parts sold by LKQ

on the CCC software platform, which allegedly correspond to the following GM design patents:

| Part # | GM Design Patent |
|---|---|
| GM1036176 | D786,743 |
| GM1230463 | D824,825 |
| GM1230456C | D812,532 |
| GM1230456 | D812,532* |
| GM1036176 | D786,743* |
| GM1103203 | D828,261 |
| GM1138104 | D828,261 |
| GM1139104 | D828,261 |
| GM1038243 | D840,285 |
| GM1039243 | D840,285 |
| GM1230465C | D818,903 |
| GM1200752 | D803,731 |

While Part GM1230456 was alleged to be covered by the '743 Patent (which was also alleged to

cover Part GM1036176) in the CCC Letter, LKQ believes that this was in error, and that the

allegedly corresponding GM Patent is the '532 Patent.  Further, Part GM1036176 was listed twice

and was alleged to be covered by the '261 Patent (also alleged to cover several other parts).  LKQ

suspects that the allegedly corresponding patent is the '743 Patent.   Regardless of LKQ's

suspicions as to what GM design patent is actually alleged to cover the parts identified, all of the

GM Design Patents At Issue were expressly alleged to cover a part offered by LKQ and a case and controversy exists as to each of them.

26.    Each of the GM Design Patents At Issue is assigned to GM Global Technology Operations, LLC.

## <u>NON-INFRINGMENT ALLEGATIONS – THE '903 PATENT</u>

27.    The '903 Patent was filed on June 17, 2016 and issued on May 29, 2018.  *See* Exhibit C.

28.    The below comparison illustrates the alleged infringing part compared to the alleged GM design patent:



| Part GM1230465C | GM Design Patent |
|---|---|
| | FIG. 4 |
| | Ex. C, FIG. 4. |

29.    LKQ does not infringe the '903 Patent because LKQ is licensed to the '903 Patent.

30.    Pursuant to the DPLA entered into between GM and LKQ, LKQ is licensed to patents identified to it by GM.  One of those parts is the "Acadia Hood," with exemplary GM part

7

number 23265062—the corresponding part number for GM part number 23265062 is GM1230465C.

31.     LKQ began offering parts corresponding to the '903 Patent in accordance with the DPLA.

32.     Since it began offering parts for sale that correspond to the '903 Patent, LKQ has properly paid royalties to GM commensurate with the terms and conditions of the LKQ-GM DPLA.  GM has never rejected the royalties paid by LKQ or objected to LKQ paying royalties on parts corresponding to the '903 Patent.

33.     GM has not updated the DPLA to indicate to LKQ that it was not licensed to make parts corresponding to the '903 Patent.

### NON-INFRINGEMENT ALLEGATIONS – THE '731 PATENT

34.     The '731 Patent was filed on July 6, 2016, and issued on November 28, 2017.  *See* Exhibit D.

35.     The below comparison illustrates the alleged infringing part compared to the alleged GM design patent:

| Part GM1200752 | GM Design Patent |
|:---:|:---:|
|  | FIG. 1<br>Ex. D, FIG. 1. |

36.     LKQ is licensed pursuant to the DPLA to produce the above part.

8

37.     GM part number 23159133 is licensed to LKQ, corresponding to the "Acadia Grille."   GM part number 23159133 corresponds to both part numbers GM1200751 and GM1200752.  GM1200751 is shown below:

| Part GM1200751 |
|---|
|  |

38.     While GM identified the "Acadia Grille" and its corresponding part number as a licensed part, it identified both "Acadia Grille" and "Acadia Grille Lwr" as corresponding to U.S. Des. Pat. No. D813,730, shown below:

| Part GM1200751 | GM Design Patent D813,730 |
|---|---|
|  | Ex. E, FIG. 1. |

39.     GM's failure to expressly identify the '731 Patent in addition to D813,730 was a clerical error as evidenced by the fact that GM specifically identified the Acadia Grille and its corresponding part number as an exemplary licensed part.

9

40.     By identifying the Acadia Grille as a licensed vehicle part, GM clearly intended to grant LKQ a license to the corresponding '731 Patent, and LKQ understood GM's designation to constitute a license to the '731 Patent.

41.     LKQ began offering parts corresponding to the "Acadia Grille" as identified by GM and as corresponding to the '731 Patent.

42.     Since it began offering parts for sale that correspond to the '731 Patent, LKQ has properly paid royalties to GM commensurate with the terms and conditions of the LKQ-GM DPLA.  GM has never rejected the royalties paid by LKQ or objected to LKQ paying royalties on parts corresponding to the '731 Patent.

43.     GM has not updated the DPLA to indicate to LKQ that it was not licensed to make parts corresponding to the '731 Patent.

**<u>NON-INFRINGMENT ALLEGATIONS – THE '532 PATENT</u>**

44.     The '532 Patent was filed in the United States on July 28, 2016, claiming priority to a Korean application filed on February 12, 2016.  *See* Exhibit F.  The '532 Patent issued on March 13, 2018 without any office actions.

45.     The '532 Patent claims "[t]he ornamental design for a hood panel of car, as shown and described" and contains the below seven figures and descriptions:

Fig. 1



Ex. F, FIG 1. "FIG. 1 is a perspective view of new design for a hood panel of car as shown in the drawings." *Id.* at 1.

Fig. 2



Ex. F, FIG. 2. "FIG. 2 is a front elevation view thereof." *Id.* at 1.

Fig. 3



Ex. F, FIG. 3. "FIG. 3 is a rear elevation view thereof." *Id.* at 1.

Fig. 4



Ex. F, FIG. 4. "FIG. 4 is a left side elevation view thereof." *Id.* at 1.

Fig. 5



Ex. F, FIG. 5. "FIG. 5 is a right side elevation view thereof." *Id.* at 1.

Fig. 6



Ex. F, FIG. 6. "FIG. 6 is a top plan view thereof." *Id.* at 1.

11



**Fig. 7**

Ex. F, FIG. 7. "FIG. 7 is a bottom plan view thereof."

46. The below comparison illustrates the alleged infringing part compared to the alleged GM design patent:



| Part GM1230456C | GM Design Patent |
|---|---|
| | Ex. F, FIG. 6 (inverted) |
| | Ex. F, FIG. 7 |

47. LKQ does not infringe GM's '532 Patent because an ordinary observer would not be confused into thinking that the design of the part and the design covered by the '532 Patent are substantially similar.

48. The part produced by LKQ is longer, has a more rounded front edge and less rounded rear edge than the '532 Patent. Further, the part produced by LKQ has a more prominent center bevel than the '532 Patent.

49. Thus, LKQ does not infringe the '532 Patent.

**<u>INVALIDITY ALLEGATIONS – THE '532 PATENT</u>**

50. LKQ incorporates the allegations of Paragraphs 44–49 herein.

51. The '532 Patent is invalid as obvious over the prior art.

52. There are two non-redundant grounds for the unpatentability of the '532 Patent:

- Obvious over the 2013 Kia Sportage in light of the 2015 Opel Corsa; and

- Obvious over the 2011 Kia Sorento in light of the 2015 Opel Corsa.

53. The 2013 Kia Sportage is a reference that is basically the same as the claimed design of the '532 Patent. The below chart compares exemplary images of the 2013 Kia Sportage to the claimed design of the '532 Patent:



| '532 Patent | 2013 Kia Sportage |
|---|---|
| Fig. 1<br><br>Ex. F, FIG 1. | Ex. G |
| Fig. 2<br><br>Ex. F, FIG. 2. | Ex. G |
| **Fig. 5**<br><br>Ex. F, FIG. 5. | Ex. G |

14

54.     The 2013 Kia Sportage was publicly available, sold, and purchased by consumers and images of the 2013 Kia Sportage were publicly available at least as early as 2012, and it thus constitutes prior art under 35 U.S.C. § 102(a)(1).

55.     Any difference between the '532 Patent and the 2013 Kia Sportage is suggested by the secondary reference, the 2015 Opel Corsa. *See* Exhibit H.

56.     The appearance of the hood of the 2015 Opel Corsa is so related to the 2013 Kia Sportage that the appearance of features in one would suggest the application to the other:

| 2013 KIA SPORTAGE | 2015 OPEL CORSA |
|---|---|
|  | |
| Ex. G | Ex. H |

57.     The underside of the 2015 Opel Corsa has a similar overall shape as the 2013 Kia Sportage.

58.     The 2015 Opel Corsa was publicly available, sold, and purchased by consumers and images of the 2015 Opel Corsa were publicly available at least as early as February 5, 2015, and it thus constitutes prior art under 35 U.S.C. § 102(a)(1).

59.     As shown below, the additional features of the Opel Corsa combined with the 2013 Kia Sportage would create a design with substantially the same overall visual appearance of the '532 Patent:

| '532 PATENT | 2015 OPEL CORSA |
|---|---|
|  Fig. 7<br><br>Ex. F, FIG. 7. | Ex. H |

60.     Given the relatedness in designs, an ordinary designer would have been motivated to combine the 2013 Kia Sportage with the Opel Corsa to arrive at a design that is substantially the same as the claimed design of the '532 Patent.

61.     Thus, the '532 Patent is invalid as obvious.

62.     The 2011 Kia Sorento is a reference that is basically the same as the claimed design of the '532 Patent.  The below chart compares exemplary images of the 2011 Kia Sorento to the claimed design of the '532 Patent:

16



| '532 PATENT | 2011 KIA SORENTO |
|---|---|
| Fig. 1 | |
| Ex. F, FIG 1. | Ex. I |
| Fig. 2 | |
| Ex. F, FIG. 2. | Ex. I |
| Fig. 5 | |
| Ex. F, FIG. 5. | Ex. I |

63.     The 2011 Kia Sorento was publicly available, sold, and purchased by consumers and images of the 2011 Kia Sorento were publicly available at least as early as 2009, and it thus constitutes prior art under 35 U.S.C. § 102(a)(1).

64.     Any difference between the '532 Patent and the 2011 Kia Sorento is suggested by the secondary reference, the 2015 Opel Corsa.

65.     The appearance of the hood of the Opel Corsa is so related to the 2011 Kia Sorento that the appearance of features in one would suggest its application to the other:



| 2011 KIA SORENTO | 2015 OPEL CORSA |
|---|---|
| Ex. I | Ex. H |

66.     The underside of the Opel Corsa has a similar overall shape as the 2011 Kia Sorento.

67.     As shown below, the additional features of the Opel Corsa combined with the 2011 Kia Sorento would create a design with substantially the same overall visual appearance of the '532 Patent:

18



| '532 PATENT | 2015 OPEL CORSA |
|---|---|
| Fig. 7 | |
| Ex. F, FIG. 7. | Ex. H |

68.     Given the relatedness in designs, an ordinary designer would have been motivated to combine the 2011 Kia Sorento with the Opel Corsa to arrive at a design that is substantially the same as the claimed design of the '532 Patent.

69.     Thus, the '532 Patent is invalid as obvious.

## INVALIDITY ALLEGATIONS – THE '743 PATENT

70.     The '743 Patent was filed in the United States on December 22, 2015 and issued on May 16, 2017.  *See* Exhibit J.  It was subject to an Ex Parte Quayle Action by the Examiner to amend the description of Figure 3 and the broken line statement.

71.     The '743 Patent claims "[t]he ornamental design for a vehicle lower grille, as shown and described" and contains the below four figures and descriptions:



Ex. J, FIG 1. "FIG. 1 is a perspective view of the vehicle lower grille." *Id.* at 1.

Ex. J, FIG. 2. "FIG. 2 is a front view thereof." *Id.* at 1.

Ex. J, FIG. 3. "FIG. 3 is a top plan view thereof." *Id.* at 1.

Ex. J, FIG. 4. "FIG. 4 is a left side elevation view thereof (where the right side elevation view is omitted since the right side elevation view is mirror image of the left side elevation view)." *Id.* at 1.

72.     The broken lines shown in the figures are not claimed. Ex. J, at 1 ("The broken lines shown depict environment only and form no part of the claimed design.").

73.     The '743 Patent is invalid as obvious over the prior art.

74.     There are three non-redundant grounds that render the '743 Patent obvious:

- Obvious over U.S. Patent No. D680,921 ("Jara") in view of the 2014 Ford Fiesta;

- Obvious over Jara in view of the 2013 Ford Fusion; and

- Obvious over Jara in view of the Subaru Legacy Concept.

75.     Jara is a reference that is basically the same design as the '743 Patent. The below chart compares the figures of Jara with the figures of the claimed design of the '743 Patent:



| '743 PATENT | JARA |
|---|---|
| Ex. J, FIG 1. | Ex. K, FIG 7. |
| Ex. J, FIG. 2. | Ex. K, FIG. 3 (inverted). |
| Ex. J, FIG. 4 | Ex. K, FIG. 5 (inverted) |

21

76.     Jara was filed on December 29, 2011, and issued on April 30, 2013, and it thus constitutes prior art under 35 U.S.C. § 102(a)(1).

77.     Any difference between the '743 Patent and Jara is suggested by the secondary reference, the 2014 Ford Fiesta. *See* Exhibits L, M.

78.     The appearance of the grilles of the 2014 Ford Fiesta is so related to Jara that the appearance of features in one would suggest its application to the other:



| **JARA** | **2014 FORD FIESTA** |
|---|---|
| Ex. K, FIG. 3 (inverted). | Ex. L |

79.     The 2014 Ford Fiesta was publicly available, sold, and purchased by consumers and images of the 2014 Ford Fiesta were publicly available at least as early as May 17, 2014, and it thus constitutes prior art under 35 U.S.C. § 102(a)(1).

80.     As shown below, the additional features of the 2014 Ford Fiesta combined with Jara would create a design with substantially the same overall visual appearance of the '743 Patent:



| '743 PATENT | 2014 FORD FIESTA |
|---|---|
| Ex. J, FIG 1. | Ex. M, at 1. |
| Ex. J, FIG. 2. | Ex. L, at 1. |

81.    Given the relatedness in designs, an ordinary designer would have been motivated to combine Jara with the 2014 Ford Fiesta to arrive at a design that is substantially the same as the claimed design of the '743 Patent.

82.    Thus, the '743 Patent is invalid as obvious.

83.    As shown above, Jara is basically the same as the claimed design of the '743 Patent.

84.     Any difference between the '743 Patent and Jara is suggested by the 2013 Ford Fusion.  *See* Exhibit N.

85.     The appearance of the grilles of Jara and the 2013 Ford Fusion are so related that the existence of features in one would suggest their application to the other:

| JARA | 2013 FORD FUSION |
|---|---|
|  Ex. K, FIG. 3 (inverted). | Ex. N |

86.     The 2013 Ford Fusion was publicly available, sold, and purchased by consumers and images of the 2013 Ford Fusion were publicly available at least as early as November 13, 2013, and it thus constitutes prior art under 35 U.S.C. § 102(a)(1).

87.     As shown below, the additional features of the 2013 Ford Fusion combined with Jara would create a design with substantially the same overall visual appearance of the '743 Patent:

24

| '743 PATENT | 2013 FORD FUSION |
|---|---|
|  Ex. J FIG 1. | Ex. N, at 1. |

88.    Given the relatedness in designs, an ordinary designer would have been motivated to combine Jara with the 2013 Ford Fusion to arrive at a design that is substantially the same as the claimed design of the '743 Patent.

89.    Thus, the '743 Patent is invalid as obvious.

90.    As shown above, Jara is basically the same as the '743 Patent.

91.    Any difference between Jara and the '743 Patent is suggested by the Subaru Legacy Concept.  *See* Exhibit O.

92.    The appearance of the grilles of Jara and the Subaru Legacy Concept are so related that the existence of features in one would suggest their application to the other:



| JARA | SUBARU LEGACY CONCEPT |
|------|------------------------|
| Ex. K, FIG. 3 (inverted). | Ex. O |

93.     The Subaru Legacy Concept was publicly available, and images of the Subaru Legacy Concept were publicly available at least as early as November 15, 2013, and it thus constitutes prior art under 35 U.S.C. § 102(a)(1).

94.     As shown below, the additional features of the Subaru Legacy Concept combined with Jara would create a design with substantially the same overall visual appearance of the '743 Patent:

| '743 PATENT | SUBARU LEGACY CONCEPT |
|-------------|------------------------|
| Fig.1 <br> Ex. J, FIG 1. | Ex. O, at 1. |

95.     Given the relatedness in the designs, an ordinary designer would have been motivated to combine Jara with the Subaru Legacy Concept to arrive at a design that is substantially the same as the claimed design of the '743 Patent.

96.     Thus, the '743 Patent is invalid as obvious.

**INVALIDITY ALLEGATIONS – THE '825 PATENT**

97.     The '825 Patent was filed in the United States on March 16, 2017 and issued on August 7, 2018 without any office actions.  *See* Exhibit P.

98.     The '825 Patent claims "[t]he ornamental design for a vehicle hood, as shown and described" and contains the below four figures and descriptions:



FIG. 1

Ex. P, FIG 1.  "FIG. 1 is a perspective view of the vehicle hood."  *Id.* at 1.



FIG. 2

Ex. P, FIG. 2.  "FIG. 2 is a left side view thereof (where the right side view is a mirror image of the left side view)."  *Id.* at 1.



FIG. 3

Ex. P, FIG. 3. "FIG. 3 is a front view thereof."
*Id.* at 1.

FIG. 4

Ex. P, FIG. 4. "FIG. 4 is a top view thereof."
*Id.* at 1.

99.    The broken lines shown in the figures are not claimed.  Ex. P, at 1 ("The broken lines in the drawings illustrate portions of the vehicle hood that form no part of the claimed design.").

100.    The '825 Patent is invalid as anticipated and/or obvious over the prior art.

101.    There are two alternative, non-redundant grounds that render the '825 Patent anticipated and/or obvious:

- Anticipated by the 2011 Buick Regal, and

- Obvious over the 2014 SEAT Leon Cupra in view of the Subaru Impreza 5-Door Concept.

102.    The 2011 Buick Regal is a reference that is substantially the same as the '825 Patent.  The below chart compares exemplary images of the 2011 Buick Regal with the figures of the claimed design of the '825 Patent:

28



| '825 PATENT | 2011 BUICK REGAL |
|---|---|
| FIG. 1 <br><br> Ex. P, FIG 1. | Ex. Q |
| FIG. 3 <br><br> Ex. P, FIG. 3. | Ex. Q |
| FIG. 4 <br><br> Ex. P, FIG. 4. | Ex. Q |

103.    The 2011 Buick Regal was publicly available, sold, and purchased by consumers and images of the 2011 Buick Regal were publicly available at least as early as 2010, and it thus constitutes prior art under 35 U.S.C. § 102(a)(1).

104.    Any difference between the 2011 Buick Regal and the '825 Patent are *de minims*.

105.    An ordinary observer would believe that the designs of the 2011 Buick Regal hood and the '825 Patent are substantially the same.

106.    Thus, the '825 Patent is invalid as anticipated.

107.    In the alternative, the '825 Patent is invalid as obvious over the 2014 Seat Leon Cupra in light of the Subaru Impreza 5-Door Concept.

108.    The 2014 Seat Leon Cupra is a design that is basically the same as the '825 Patent. The below chart is a comparison of exemplary images of the 2014 Seat with the figures of the '825 Patent:



| '825 PATENT | 2014 SEAT LEON CUPRA |
|---|---|
| FIG. 1<br><br>Ex. P, FIG 1. | Ex. R |

109.    The 2014 Seat Leon Cupra was publicly available, sold, and purchased by consumers and images of the 2014 Seat Leon Cupra were publicly available at least as early as March 7, 2014, and it thus constitutes prior art under 35 U.S.C. § 102(a)(1).

110.    Any difference between the 2014 Seat Leon Cupra and the '825 Patent is suggested by the Subaru Impreza 5-Door Concept.

111.    The appearance of the hood of the 2014 Seat Leon Cupra is so related to the hood of the Subaru Impreza 5-Door Concept that the appearance of features in one would suggest its application to the other:



| 2014 SEAT LEON CUPRA | SUBARU 5-DOOR CONCEPT |
|---|---|
| Ex. R | Ex. S |

112.    As shown below, the additional features of the Subaru 5-Door Concept combined with the 2014 Seat Leon Cupra would create a design with substantially the same overall visual appearance of the '825 Patent:

| '825 PATENT | SUBARU 5-DOOR CONCEPT |
|:---:|:---:|
|  FIG. 3 Ex. P, FIG. 3. |  Ex. S. |

113.    The Subaru 5-Door Concept was publicly available, and images of the Subaru 5-Door Concept were publicly available at least as early as October 29, 2015, and it thus constitutes prior art under 35 U.S.C. § 102(a)(1).

114.    Given the relatedness of the designs, an ordinary designer would have been motivated to combine the 2014 Seat Leon Cupra with the Subaru 5-Door Concept to arrive at a design that is substantially the same as the claimed design of the '825 Patent.

115.    Thus, the '825 Patent is invalid as obvious.

## INVALIDITY ALLEGATIONS – THE '285 PATENT

116.    The '285 Patent was filed in the United States on July 20, 2017 and issued on February 12, 2019 without any office actions.  *See* Exhibit T.

117.    The '285 Patent claims "[t]he ornamental design for a vehicle grille bezel, as shown and described" and contains the below four figures and descriptions:



**FIG. 1**

Ex. T, FIG 1. "FIG. 1 is a perspective view of the vehicle grille bezel." *Id.* at 1.

**FIG. 2**

Ex. T, FIG. 2. "FIG. 2 is a front view thereof." *Id.* at 1.

**FIG. 3**

Ex. T, FIG. 3. "FIG. 3 is a side view thereof." *Id.* at 1.

**FIG. 4**

Ex. T, FIG. 4. "FIG. 4 is a top view thereof." *Id.* at 1.

118.    The broken lines shown in the figures are not claimed. Ex. T, at 1 ("The broken lines in the drawings illustrate portions of the vehicle grille bezel that form no part of the claimed design.").

119.    The '285 Patent is invalid as anticipated and/or obvious over the prior art.

120.    The 2015 Saleen Mustang grille bezel s a reference that is basically the same design as the '285 Patent.  The below chart compares exemplary images of the 2015 Saleen Mustang with the figures of the claimed design of the '285 Patent:

| '285 PATENT | 2015 SALEEN MUSTANG |
|---|---|
|  FIG. 2 Ex. T, FIG. 2. | Ex. U, FIG 1. |

121.    The 2015 Saleen Mustang was publicly available, sold, and purchased by consumers and images of the 2015 Saleen Mustang were publicly available at least as early as August 17, 2015, and it thus constitutes prior art under 35 U.S.C. § 102(a)(1).

122.    Any difference between the 2015 Saleen Mustang and the '285 Patent are *de minims*.

123.    An ordinary observer would believe that the designs of the 2015 Saleen Mustang grille bezel and the '285 Patent are substantially the same.

124.    Thus, the '285 Patent is invalid as anticipated and/or obvious.

### INVALIDITY ALLEGATIONS – UNPATENTABLE COMPONENTS

125.    The '743 Patent; the '825 Patent; the '532 Patent; and the '285 Patent are invalid because they are designs applied to functionless component parts of a functional whole vehicle, and therefore empower GM with the ability to improperly subvert the exhaustion doctrine and prevent consumers from exercising their right to repair their own vehicles.

126.    Design patents are limited to "articles of manufacture."  35. U.S.C. § 171.

34

127. The original meaning of an "article of manufacture" was an article that was complete in itself, and not a part or sub-part of something that needed further assembly to be functional.[1]

128. The '743 Patent' '825 Patent; '532 Patent; and '285 Patent are design patents for the ornamental designs of, respectively, a vehicle grille, two vehicle hoods, and a vehicle grille bezel. These are minor, sub-parts of a larger item, the entire vehicle.

129. Patents on these sub-parts contravene the consumer's right to repair their own vehicle. The consumer has already purchased a vehicle embodying the design patent for the grille, hood, or bezel, , and so the consumer also has the right to repair the article that she has paid for, as long as she is not reconstructing a new patented article.

130. As the '743 Patent; the '825 Patent; the '532 Patent; and the '285 Patent are not designs for "articles of manufacture," but an impermissible attempt to circumvent patent exhaustion and the consumer's right to repair her vehicle, these patents should be found invalid.

## COUNT I – NON-INFRINGMENT OF THE '903 PATENT

131. LKQ realleges and incorporates Paragraphs 1–130 as if fully set forth herein.

132. LKQ does not infringe the '903 Patent because LKQ is licensed to the '903 Patent.

---

[1] LKQ believes that there is a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law regarding the patentability of functionless component parts. *See, e.g.*, Sarah Burstein, *The "Article of Manufacture" in 1887*, 32 BERKELEY TECH. L.J. 1 (2017), at 5, https://papers.ssrn.com/sol3/_papers.cfm?abstract_id=2850604 (in 1887, "article of manufacture" was a term of art that "referred to a tangible item made by humans—*other than* a machine or composition of matter—that had a unitary structure and *was complete in itself* for use or for sale").

35

133.    As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that LKQ does not infringe the claim of the '903 Patent.

## COUNT II – NON-INFRINGEMENT OF THE '731 PATENT

134.    LKQ realleges and incorporates Paragraphs 1–133 as if fully set forth herein.

135.    LKQ does not infringe the '731 Patent because LKQ is licensed to the '731 Patent.

136.    As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that LKQ does not infringe the claim of the '731 Patent.

## COUNT III– NON-INFRINGEMENT OF THE '532 PATENT

137.    LKQ realleges and incorporates Paragraphs 1–136 as if fully set forth herein.

138.    LKQ does not infringe the '532 Patent because the part that LKQ produces is not within the scope of and does not infringe the claim of the '532 Patent.

139.    As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that LKQ does not infringe the claim of the '731 Patent.

## COUNT IV – INVALIDITY OF THE '532 PATENT

140.    LKQ realleges and incorporates Paragraphs 1–139 as if fully set forth herein.

141.    The claim of the '532 Patent is invalid as obvious over the prior art.

142.    The claim of the '532 Patent is further invalid because it is not an "article of manufacture," but rather a component part.

143.     As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that the claim of the '532 Patent is invalid.

### COUNT V – INVALIDITY OF THE '743 PATENT

144.     LKQ realleges and incorporates Paragraphs 1–143 as if fully set forth herein.

145.     The claim of the '743 Patent is invalid as obvious over the prior art.

146.     The claim of the '743 Patent is further invalid because it is not an "article of manufacture," but rather a component part.

147.     As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that the claim of the '743 Patent is invalid.

### COUNT VI – INVALIDITY OF THE '825 PATENT

148.     LKQ realleges and incorporates Paragraphs 1–147 as if fully set forth herein.

149.     The claim of the '825 Patent is invalid as anticipated and/or obvious over the prior art.

150.     The claim of the '825 Patent is further invalid because it is not an "article of manufacture," but rather a component part.

151.     As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that the claim of the '825 Patent is invalid.

### COUNT VII – INVALIDITY OF THE '285 PATENT

152.     LKQ realleges and incorporates Paragraphs 1–151 as if fully set forth herein.

153.    The claim of the '285 Patent is invalid as anticipated and/or obvious over the prior art.

154.    The claim of the '532 Patent is further invalid because it is not an "article of manufacture," but rather a component part.

155.    As a result of the acts described in the foregoing paragraphs, a substantial controversy of sufficient immediacy and concreteness exists to warrant the issuance of a declaratory judgment that the claim of the '285 Patent is invalid.

## **PRAYER FOR RELIEF**

WHEREFORE, LKQ prays for:

a.  A declaration that LKQ has not infringed and is not infringing, directly or indirectly, the claim of the '903, '731, and '532 Patents;

b.  A declaration that the single claims of the '532, '743, '825, and '285 Patents are invalid;

c.  An order that GM and each of its officers, employees, agents, attorneys, and any persons in active concert or participation with them are restrained and enjoined from further prosecuting or instituting any action against LKQ or the purchasers of LKQ's products claiming that the alleged patents are infringed or from representing that LKQ's products or their use un networks operated by purchasers of those products infringe the alleged patents;

d.  A declaration that this is an exceptional case under 35 U.S.C § 285;

e.  An Award to LKQ of its costs and attorney's fees;

f.  Such other relief as this Court or a jury may deem proper and just under the circumstances.

## **JURY DEMAND**

LKQ demands a trial by jury on all issues so triable.

Dated: May 6, 2020      Respectfully submitted,


*/s/ Barry F. Irwin, P.C.*

Barry F. Irwin, P.C.

Reid P. Huefner

Chris D. Eggert

Manon L. Burns

**IRWIN IP LLC**

222 South Riverside Plaza

Suite 2350

Chicago, IL  60606

(312) 667-6080

birwin@irwinip.com

rhuefner@irwinip.com

ceggert@irwinip.com

mburns@irwinip.com

*Attorneys for Plaintiff LKQ*