# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LKQ CORPORATION, and KEYSTONE AUTOMOTIVE INDUSTRIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> GENERAL MOTORS COMPANY, GM GLOBAL TECHNOLOGY OPERATIONS, LLC, and GENERAL MOTORS LLC <br><br> Defendants. | Civil Action No. 1:20-cv-02753 <br><br> The Honorable Thomas M. Durkin |

## DEFENDANTS' MOTION TO AMEND INFRINGEMENT CONTENTIONS

**TABLE OF CONTENTS**

I. GM Requested Discovery From LKQ That Encompassed GM1036175, but LKQ Limited its Production to the Literal Part Number's In GM's Answer and Counterclaims ................................................................................................... 1

II. GM Has Good Cause to Amend its Infringement Contentions to Add GM1036175 ........................................................................................................................ 4

    A. GM Has Good Cause for its Amendment ............................................................... 4

    B. There is no Discernable Prejudice to LKQ by GM's Amendment ......................... 6

III. Conclusion ....................................................................................................................... 7

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*3Com Corp. v. D-Link Systems, Inc.*,
  2007 WL 949599 (N.D. Cal. Mar. 27, 2007) ................................................................................6

*Am. Broadcasting Co., Inc. v. Malijack Prod., Inc.*,
  1998 WL 325209 (N.D. Ill. June 9, 1998) ...................................................................................7

*Dr. Systems, Inc. v. Fujifilm Medical Systems USA, Inc.*,
  Civil No. 06cv417 JLS (NLS), 2008 U.S. Dist. LEXIS 29485 (S.D. Cal. Apr.
  10, 2008) ......................................................................................................................................5

*epicRealm Licensing LLC v. Autoflex Leasing, Inc.*,
  Nos. 2-07-CV-163-DF-CMC & 2-05-CV-356-DF-CMC, 2007 WL 2580969
  (E.D. Tex. Aug. 27, 2007) ...........................................................................................................4

*Honeywell Intern. Inc. v. Acer America Corp.*,
  655 F.Supp.2d 650 (E.D. Tex, 2009) ...........................................................................................5

*MacLean-Fogg Co. v. Eaton Corp.*,
  2008 WL 4601476 (E.D. Tex. Oct. 6, 2008) ...............................................................................6

*Mass Engineered Design, Inc. v. Ergotron, Inc.*,
  2008 WL 1930299 (E.D. Tex. Apr. 30, 2008) .........................................................................6, 7

*Oleksy v. Gen. Elec. Co.*,
  No. 06-cv-1245, 2013WL 3944174 (N.D. Ill. July 31, 2013) .....................................................4

*Thermapure, Inc. v. Giersten Co. of Ill.*,
  2012 WL 6196912 (N.D Ill. Dec. 11, 2012) ................................................................................4

GM requests leave to amend its infringement contentions to add an additional infringing part that is a mere variation on another part already accused in this case. By its Counterclaims, GM accuses LKQ of selling infringing replacement parts for GM vehicles, including replacement lower grilles for the Cadillac XT5. LKQ sold or offered for sale various versions of the XT5 lower grille. However, during discovery, LKQ withheld information regarding the various replacement XT5 grilles it sells, instead limiting its responses and production to only the *exact* part number identified in GM's Counterclaims (GM1036176). Based on LKQ's discovery responses, GM accused only part number GM1036176 of infringing GM's design patent on the XT5 lower grille. However, shortly after the exchange of contentions, GM learned that LKQ also offers other infringing XT5 lower grilles under a slightly different part number (GM1036175). After learning this information, GM immediately raised the issue with LKQ and requested if LKQ would consent to GM amending its contentions to add this additional version of the XT5 grille. LKQ did not provide its position for ***more than a month***, despite repeated requests from GM. Finally, on April 16, 2021, LKQ indicated that it opposed GM's requested amendment, and GM filed this motion shortly thereafter.[1]

**I.  GM Requested Discovery From LKQ That Encompassed GM1036175, but LKQ Limited its Production to the Literal Part Number's In GM's Answer and Counterclaims**

On September 11, 2020, GM filed its Answer and Counterclaims (ECF No. 36) asserting infringement by LKQ of four of GM's design patents, including U.S. Design Patent No. D786,743 ("the '743 patent"). (*See* ECF No. 36 ¶¶ 35-46.) The '743 patent claims the ornamental design for a lower grille corresponding to the 2017-2019 Cadillac XT5. (*Id*. ¶ 39.)

---

[1] As set forth in GM's response to LKQ's proposed briefing schedule on LKQ's own motion to amend, LKQ opposes this motion by GM, and GM set forth in that pleading (ECF No. 86) GM's proposed briefing schedule on this motion.

1

By its counterclaim, GM asserted that Plaintiffs LKQ and Keystone have sold or offered to "sell parts, *e.g., **LKQ Part No. GM1036176***, that an ordinary observer would believe are substantially similar to the design covered by the '743 patent." (*Id*. ¶ 40 (emphasis added).)

Five days later, on September 16, 2020, GM served its First Set of Requests for Production to Plaintiffs (Nos. 1-29). (Ex. 1.) In its requests for production, GM defined[2] "Accused Products" as follows:

> "Accused Products" includes *at least* LKQ part numbers: GM1036176, GM1038243, GM1039243, GM1230456C, GM1230456, and GM1230463, and including *any other versions of these products* (including but not limited to versions that are the same design or product but correspond to a different year, different orientation (i.e., right versus left), different material, supersession by another part number) *that may have been given different LKQ part numbers*, and any other LKQ product subsequently accused of infringement in this litigation.

(Ex. 2 at 3-4.) Several of GM's requests for production requested information related to the "Accused Products," including the following:

> [RFP 1] Two representative samples of *each Accused Product, including at least* LKQ part numbers GM1036176, GM1038243, GM1039243, GM1230456C, GM1230456, and GM1230463.
>
> [RFP 2] Documents related to the production, manufacture, and/or *design of the Accused Products*, including documents sufficient to identify all third-parties involved in the production, manufacture, and/or design of the Accused Products.

(Ex. 1 at 2.)

Despite GM's request for "other versions of these products (including but not limited to versions that are the same design or product but correspond to a different year, different orientation (i.e., right versus left), different material, supersession by another part number)," LKQ limited its discovery responses and production to only the *exact* part numbers in GM's

---

[2] GM's requests for production incorporate the definitions given in GM's interrogatories served on LKQ, which are attached hereto as Exhibit 2.

2

Counterclaims and Requests for Production. For example, LKQ produced documents and a physical sample of GM1036176 (LKQ's copy of GM's Cadillac XT5 lower grille), but did not produce a physical sample or documentation regarding any other versions of this product. Given LKQ's responses, GM identified GM1036176 in its infringement contentions served on January 29, 2021. (Ex. 3.)

Shortly after serving its infringement contentions, GM learned that LKQ may be selling or offering for sale additional iterations of the Cadillac XT5 lower grille under a slightly different part number. (Ex. 4.) In particular, GM discovered that LKQ sells its Cadillac XT5 lower grille replacement under part number GM103617**5** (in addition to part GM103617**6** identified in GM's infringement contentions).[3] (*Id.*) GM immediately raised this issue with LKQ, sending a letter on February 16, 2021 (just 18 days after GM's service of its infringement contentions). (*Id.*)

Despite notifying LKQ of its deficient production on February 18, LKQ did not produce any additional documentation regarding GM1036175, and LKQ only produced a physical sample nearly two months later, on April 6, 2021 after repeated follow up from GM.[4] (*See* Ex.5, Ex. 6.) Immediately after receiving this discovery, GM prepared amended infringement contentions for

---

[3] The only apparent difference between GM1036176 and GM1036175, is that GM1036176 is configured for vehicles having a cruise-control radar, and GM1036175 is not.

[4] During negotiations, LKQ agreed not to hold LKQ's delay against GM in connection with a motion to amend GM's infringement contentions. (*See* Ex. 9 ("LKQ agree[s] that it will not argue or assert any delay associated with the time frame between the submission of GM's infringement contentions and a reasonable period of time after LKQ provides the agreed upon discovery into GM1036175 as a basis to assert that GM has not demonstrated good cause in the event it seeks to amend its infringement contentions to add this part into the litigation.").) Further, GM asked for LKQ's position on GM's proposal to add GM1036175 to the case in late February. (Ex. 10.) LKQ responded on February 26, 2019 that "LKQ is considering its position on a possible amendment by GM to include GM1036175 in its infringement contentions," but LKQ did not provide its position until more than a month later. (*Id.*)

3

GM1036175, and provided a copy to LKQ on April 13, 2021. (Ex. 7 (email), Ex. 8 (copy of draft contentions).)

## II. GM Has Good Cause to Amend its Infringement Contentions to Add GM1036175

Pursuant to the Court's Scheduling Order (ECF No. 60), an amendment to GM's infringement contentions requires "a showing of good cause." Good cause may be established by a "showing that a valid basis for amendment exists [and] also that the party seeking leave to amend acted diligently. *See Oleksy v. Gen. Elec. Co.*, No. 06-cv-1245, 2013WL 3944174, at *2 (N.D. Ill. July 31, 2013). When good cause is shown, courts liberally grant leave to amend absent any unfair prejudice to the other party. *Thermapure, Inc. v. Giersten Co. of Ill.*, 2012 WL 6196912, at *1 (N.D Ill. Dec. 11, 2012). GM meets the good cause standard here, and there is no discernable prejudice to LKQ.

### A. GM Has Good Cause for its Amendment

GM has good cause for its proposed amendment to its infringement contentions, because GM1036175 infringes the '743 patent and GM moved to immediately supplement its contentions after receiving discovery from LKQ regarding GM1036175.

GM was diligent in seeking to amend its contentions. As stated above, GM's discovery requests sought not only the products corresponding to the exact part numbers in the complaint, but also parts that were reasonably similar to such specifically identified parts.[5] GM1036175, the part GM seeks to add to this case, falls within this request.

---

[5] LKQ's cabining of its discovery responses to the *exact* part numbers in GM's counterclaim was inconsistent with well-established law regarding the scope of discovery into potentially infringing products. For example, in *epicRealm Licensing LLC v. Autoflex Leasing, Inc.*, Nos. 2-07-CV-163-DF-CMC & 2-05-CV-356-DF-CMC, 2007 WL 2580969 at *3 (E.D. Tex. Aug. 27, 2007), a judge in the Eastern District of Texas rejected that discovery can be obtained only if it relates to an accused product or service identified in a party's infringement contentions. Instead, the court recognized that the scope of discovery in a patent case may include products and services "reasonably similar" to those accused in the infringement contentions. 2007 WL

4

As shown in GM's proposed amended contentions (attached as Exhibit 11), GM1036175 is highly similar to GM1036176, which GM identified in the Complaint. Indeed, as shown in the side-by-side images below, the only difference between the two products is a minor difference in GM1036176 (the flat portion in the third image below) to accommodate a cruise-control radar:



LKQ should have identified GM1036175 in response to GM's discovery requests, but did not do so. Indeed, LKQ is the party who knows its product portfolio and part numbers, not GM. As soon as GM learned that there was potentially another part implicated, GM informed LKQ of its discovery deficiency and sought production of the additional part. After LKQ shipped a copy of

---

2580969 at *3; *see also Honeywell Intern. Inc. v. Acer America Corp.*, 655 F.Supp.2d 650, 655 (E.D. Tex, 2009) (rule limiting discovery to products and services identified in preliminary infringement contentions would be "inconsistent with the broad discovery regime created by the Federal Rules"); *Dr. Systems, Inc. v. Fujifilm Medical Systems USA, Inc.*, Civil No. 06cv417 JLS (NLS), 2008 U.S. Dist. LEXIS 29485 at *12–13 (S.D. Cal. Apr. 10, 2008) (concluding that under Rule 26, discovery should not only be limited to products expressly accused).

5

GM1036175 on April 6, GM provided draft supplemental contentions to LKQ less than a week later, and subsequently filed this motion shortly thereafter.

The only reason GM did not include GM1036175 in GM's initial contentions was LKQ's own failure to properly respond to GM's discovery requests regarding the "Accused Products." Many courts have found good cause in similar scenarios. *See, e.g.*, *MacLean-Fogg Co. v. Eaton Corp.*, 2008 WL 4601476, *2–3 (E.D. Tex. Oct. 6, 2008) (granting patentee's motion for leave to supplement its infringement contentions and add an additional accused product, the court finding good cause where the accused infringer had not produced the full product assembly until months after originally requested.); *Mass Engineered Design, Inc. v. Ergotron, Inc.*, 2008 WL 1930299, at *3 (E.D. Tex. Apr. 30, 2008) (granting leave to amend infringement contentions to address new accused products where plaintiff showed good cause based on defendant's delay in providing discovery related to the new products and the defendant would not suffer prejudice); *see also 3Com Corp. v. D-Link Systems, Inc.,* 2007 WL 949599, *7–8 (N.D. Cal. Mar. 27, 2007) (permitting patentee to amend its preliminary infringement contentions to assert additional accused products against intervening accused infringer and ruling that patentee showed good cause where leave was sought early and the additional products appeared substantially the same as the previous accused products). Had LKQ included GM1036175 in its initial discovery responses when it provided GM1036176 to GM, GM would have included GM1036175 in its initial contentions.

As such, GM has demonstrated good cause for its amendment.

### B. There is no Discernable Prejudice to LKQ by GM's Amendment

Not only has GM shown good cause for its amendment, but there is no prejudice to LKQ by adding GM1036175. To the extent any prejudice exists, it is by LKQ's own making for failing to timely provide discovery into GM1036175.

6

In evaluating prejudice from a proposed amendment, courts consider "the hardship to the moving party if the request to amend is denied . . . and the harm to the opposing party if the motion is granted." *Am. Broadcasting Co., Inc. v. Malijack Prod., Inc.*, 1998 WL 325209, at *2 (N.D. Ill. June 9, 1998). Here, denying GM's proposed amendment would cause substantial hardship to GM, forcing it to file an entirely new infringement case against LKQ on a part similar to one of the parts already at issue in this case.

There is also no harm to LKQ in allowing GM to assert infringement against GM1036175 in addition to GM1036176. Given the similarity between the two parts, there is little additional burden on LKQ to provide discovery into GM1036175 or provide non-infringement defenses as to GM1036175. Further, approximately five months remain in discovery, providing more than sufficient time for any additional discovery regarding GM1036175 that would not be coextensive with GM1036176.

Finally, to the extent there is any discernable prejudice to LKQ (and GM contends there is none), such prejudice is entirely attributable to LKQ and does not warrant denial of GM's proposed amendment. *See Mass Engineered Design, Inc. v. Ergotron, Inc*., 2008 WL 1930299, at *3 (E.D. Tex. Apr. 30, 2008) ("If Tech Data had properly answered the propounded interrogatory or granted earlier access to its website, then MASS would have known about the newly proposed products prior to the leave to amend deadline, and this entire motion practice might have been avoided.").

### III. Conclusion

For the reasons set forth above, GM respectfully requests that the Court grant its motion for leave to amend its infringement contentions against LKQ to add GM1036175.

7

Dated: April 21, 2021                               FISH & RICHARDSON P.C.


By: */s/ Conrad A. Gosen*
    John C. Adkisson (*pro hac vice*)
    adkisson@fr.com
    Joseph A. Herriges (*pro hac vice*)
    herriges@fr.com
    Conrad A. Gosen (*pro hac vice*)
    gosen@fr.com
    Brianna L. Chamberlin (*pro hac vice*)
    chamberlin@fr.com
    FISH & RICHARDSON P.C.
    3200 RBC Plaza
    60 South 6th Street
    Minneapolis, MN 55402
    Telephone: (612) 335-5070
    Facsimile: (612) 288-9696

    Steven McMahon Zeller (IL 6238416)
    szeller@dykema.com
    DYKEMA GOSSETT PLLC
    10 South Wacker Drive
    Suite 2300
    Chicago, IL 60606
    Telephone: (312) 627-2272

**Attorneys for *Defendants***
**General Motors Company, GM Global Technology Operations, LLC, and General Motors LLC**

8

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served via CM/ECF on April 21, 2021 upon all counsel of record.

          */s/ Conrad A. Gosen*
          Conrad A. Gosen
          gosen@fr.com