IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LKQ CORPORATION and KEYSTONE AUTOMOTIVE INDUSTRIES, INC. | ) ) ) | |
| Plaintiff, | ) ) | No. 20 C 2753 |
| v. | ) ) | Magistrate Judge Jeffrey Cole |
| GENERAL MOTORS COMPANY, et al., | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The plaintiff has filed a "Motion to Compel Responses to LKQ's Requests for Production and Interrogatories." For the following reasons, the motion [Dkt. #111] is granted in part and denied in part.

This is the third motion in a series of three multi-faceted discovery disputes the parties have been unable to resolve despite Local Rule 37.2. This one entails 33 document requests and one interrogatory, which – especially when combined with the parties' other two motions – calls into question whether the parties actually met and conferred in the objective *good faith* mandated by the Rule. In any event, the point the parties are presently at despite weeks and sometimes months of these disputes going on, is about the point most cases are at before there have been Local Rule 37.2 discussions. Unfortunately, the issues that divide the parties have seemingly not been pared down and/or crystalized in a fashion that would make for efficient judicial resolution.

**A.**

We begin with what is undisputed but is essential to a proper understanding of the disputes presently before the court. The resolution of discovery disputes is committed to the court's broad

discretion. *King v. Ford Motor Co.*, 872 F.3d 833, 838 (7th Cir. 2017); *Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016). As we have discussed in earlier opinions in this case, discretion allows two decision-makers – on virtually identical facts – to arrive at opposite conclusions, both of which constitute appropriate exercises of discretion. *See* the discussion in *LKQ Corp. v. General Motors Co.*, 2021 WL 4125097 (N.D. Ill. 2021). Thus, a negotiated outcome is more likely to give both sides at least a somewhat satisfactory resolution than can be obtained by seeking judicial involvement. But, that is often not possible, as the present dispute demonstrates. Here are the rulings on the many discovery requests presented here. They have been divided into the four categories the parties have chosen to employ in their filings.

**Buick Documents from Peugeot**

Plaintiff's Request for Production ("RFP") Nos. 4, 6, 47-53, 66, and 82-90 seek documents generally relating to the development of the vehicle and the design that led to the '825 patent. Those documents happen to be in the "possession, custody, or control" of a third-party, Peugeot, who acquired the Opel business from defendant, GM, in March 2017. But, when GM transferred Opel to Peugeot, the "Master Agreement" between Peugeot and GM provided that Peugeot:

> During the period that is the longer of (I) 5 years after the Closing date . . . (I) the Buyer shall and shall cause its Affiliates to: (A) maintain the books, accounts, and all other records held by it after the Closing to the extent that they relate to any Assets Buyer Designee or any Target Group Company and to the period up to the Closing (the "Sellers' Records"); and (B) provide General Motors (at its cost) with reasonable access, during regular business hours and without unreasonable disruption to the business, to (and the right to take copies of) the Sellers' Records, subject always to the provisions of Section 12.1 (Confidentiality) and applicable Law.

The parties are arguing over whether GM has done enough to obtain the documents from Peugeot.

According to GM's response filing, it emailed Peugeot on March 24, 2021 and asked for the documents, citing the applicable section of the Master Agreement. But GM's request was hopelessly

vague, and, in order to facilitate a search, Peugeot responded promptly the next day and requested the following information:

> 1) The purpose of the litigation against LKQ. Who is the claimant/ the defendant? What's at stake?
>
> 2) Documents "related to the development of the 2018 Buick Regal exterior, including design development documents (including such things as design boards and other inspirational and conceptual materials), project management documents, and engineering drawings related to the exterior of the vehicle". Do you have specific key words ? The names of the people involved? Is there any technical reference to the front hood that would ease the research?
>
> 3) The period and location at stake: When was the front hood designed? Was it designed in Russelsheim or somewhere else?

[Dkt. #130-2].

GM replied the same day and provided the following information, which ought to have come in the original request:

> The litigation was initiated by LKQ, and they seek a declaration that one of GM's Design Patents-covering the design of the 2018 Buick Regal Hood is invalid. For your reference, I am attaching LKQ's complaint and a copy of the patent.
>
> In terms of information that would ease the research, the program was for the 2018 Buick Regal and the vehicle code was E2JB. In terms of a technical reference, the design was to the ornamental design of the hood so we're not currently aware of any further reference.
>
> Our understanding is that Niels Loeb was the designer on this project, and that he completed at least all front end design of this vehicle, including the hood. All design for this vehicle was completed in Russelsheim. With regard to timing, we believe that any information related to this project would be in the 2.01.3-2.01.7 time period.

[Dkt. #130-2]. And that appears to have been it.

It is not clear whether anything else went on between the defendant and Peugeot. Defendant claims it made "multiple requests" [Dkt. # 130, at 3] and "has exhausted its ability to obtain the

Buick documents from Peugeot." [Dkt. #130, at 5]. But, there is certainly no evidence of that. One email request, later supplemented with some information that should have been in the request in the first place – and perhaps an unspecified phone call or two – is weak, in terms of effort. This portion of plaintiff' motion is granted. Defendant shall make a concerted, good faith effort to retrieve the documents and shall report those efforts back to plaintiff and the court in two weeks. In so doing, GM should take note of the terms of its agreement with Peugeot as – at least based on what it has filed with the court – it has ignored the provision stating that it is entitled to "reasonable access" to the records.

**Employment Agreements for Hyunkil Jeong, Youngho Jung, and former employee Niels Loeb**

GM claims it has performed a "reasonable and diligent search" and has been unable to locate a copy of any former agreements with Mr. Loeb. [Dkt. #130, at 5]. But, a lawyer's unsupported statement in a brief is not evidence. *See United States v. Chapman*, 694 F.3d 908, 914 (7th Cir. 2012); *United States v. Diaz*, 533 F.3d 574, 578 (7th Cir. 2008); *Gunn v. Stevens §. & Training Servs., Inc.*, 2018 WL 1737518, at *2 (N.D. Ill. 2018). GM gives no indication to the court of what those efforts might have consisted. "Talk is cheap," *Planned Parenthood of Indiana and Kentucky v. Box*, 949 F.3d 997, 998 (7th Cir. 2019), and "unfortunately... saying so doesn't make it so...." *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir.2010). *Accord Madlock v. WEC Energy Group, Inc.*, 885 F.3d 465, 473 (7th Cir. 2018); *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 770 (7th Cir. 2020); *Donald J. Trump for President, Inc. v. Secy of Pennsylvania*, 830 F. Appx 377, 381 (3d Cir. 2020)("But calling an election unfair does not make it so. Charges require specific allegations and then proof. We have neither here."). Even the Solicitor General's unsupported assertions are not enough. *Digital Realty Trust, Inc. v. Somers*, \_U.S.\_, 138

4

S.Ct. 767, 779 (2018). *Cf. Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)(Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

Why would attorneys who have decided they will hold out for months and require court intervention to resolve what should be a routine discovery matter then decide to withhold information about that matter from the court? One guess is because GM's efforts to search for the documents were as poor as its efforts to obtain documents from Peugeot. As GM has failed to provide a meaningful, supported response to this portion of plaintiff's motion, it is granted. GM shall produce the requested Loeb agreements within one week or provide plaintiff and the court with a sworn affidavit detailing its efforts, so that the court may determine if those efforts were sufficient and in good faith.

As for the employment agreements of Hyunkil Jeong and Youngho Jung, as best as can be gleaned from the parties' submissions, the real question is whether GM has control over those individuals that they might sit for a deposition. That matter has been addressed in the ruling on the plaintiff's *other* motion to compel.

**Communications and confidentiality agreements with GM's vendors, suppliers, and manufacturers**

RFP Nos. 78-81 seeks "All documents and things constituting, referring, or relating to communications or contracts with any third-party manufacturers and/or suppliers of any GM part that embodies and/or practices [each of the patents-in-suit], relating to any such part, occurring prior to [the critical date of each patent-in-suit]." RFP Nos. 96-99 seek "[d]ocuments sufficient to identify any disclosures of the [vehicles associated with the patents-in-suit" to any third-party, including but not limited to vendors, manufacturers, or consultants, prior to [the critical date of each patent-in-suit]." This second set of requests is obviously too broad. There are three parts at issue,

5

not three entire vehicles. Production requests, therefore, ought to have been drafted limited to the parts at issue. Plaintiff's counsel ought to have known this, as counsel recently wrote a brief complaining about GM production requests that went beyond the parts at issue. [Dkt. #120, at 4-5]. Accordingly, this portion of plaintiff's motion is denied.

As for the balance of these requests, GM's argument against that seemingly relevant discovery is that plaintiff's invalidity contentions do not mention confidentiality agreements. The reason for that, however, appears to be that GM dragged its feet in responding to discovery. Plaintiff requested consumer survey and vendor documents back on August 31, 2020, but GM failed to respond fully until January 13, 2021, regarding survey documents, and until April 30, 2021, regarding vendor documents. By then, there was little or no time for plaintiff to address such disclosures in its invalidity contentions. The state of those contentions and whether they may be amended is, of course, a substantive matter for the trial court. Here, the concern is discovery and, in that context, it has to be said that plaintiff requests are appropriate.

Indeed, the cases GM relies upon say nothing about whether *discovery* is inappropriate in this instance. The cases all deal with substantive issues, and matters for trial, which, again, are not only inapposite here, but beyond the scope of a discovery referral. Indeed, the discussions in those cases suggests that the very type of discovery GM is hoping to thwart here was allowed. *See, e.g., Avnet, Inc. v. Motio, Inc.*, 2016 WL 3365430, at *6 (N.D. Ill. 2016)(the Boeing SDK engagement produced in discovery); *Medline Indus. v. C.R. Bard Inc.*, 511 F. Supp. 3d 883, 897 (N.D. Ill. 2021) (prior art that was already disclosed or uncovered); *Pactiv Corp. v. Multisorb Techs. Inc.*, 2013 WL

2384249, at *3 (N.D. Ill. 2013)(prior art that was already disclosed or uncovered).[1]

**Rule 30(b)(6) topics relating to the prosecution of each of the patents-in-suit**

Here, again, the parties appear to be fighting over the state of plaintiff's invalidity contentions, with GM refusing to provide a witness as to the topics at issue because plaintiff included only a "vague placeholder for a potential inequitable conduct claim in its contentions." But, again, GM seems bent on litigating substantive issues in a discovery dispute. The cases it relies upon should be a signal: they deal with substantive motions and/or motions filed long after the close of discovery. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1322 (Fed. Cir. 2009)(appeal from jury verdict); *Sun-Flex Co., v. Softview Comput. Prods. Corp.*, 750 F. Supp. 962, 963 (N.D. Ill. 1990) (motion to strike defendant's affirmative defense); *Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus. Ltd.*, 1996 WL 680243, at *2 (N.D. Ill. 1996) (pre-trial motion *in limine*). If GM wishes to get to the substantive issues in this case – or eliminate some substantive issues in this case – it is, of course, free to do so. But it cannot shirk its discovery obligations because it thinks it will, at some point, have some good arguments for a motion to dismiss or for a motion for summary judgment. *See* Frank H. Easterbrook, *Discovery As Abuse*, 69 B.U.L. Rev. 635, 639 (1989)("One common form

---

[1] GM also claims in its response brief – apparently for the first time since the documents were requested months ago – that many of the documents plaintiff requested "appear to have been deleted or destroyed years before [plaintiff] filed this case." [Dkt. #130, at 8]. But this is another completely unsupported and vague claim by counsel. As has been noted earlier, "saying so doesn't make it so." *See supra* at 4. "Lawyers' talk is no substitute for data." *Phillips v. Allen*, 668 F.3d 912, 916 (7th Cir. 2012). Even declarations by lawyers in certain circumstances may not suffice. *See, e.g., FTC v. Advocate Health Care Network*, 162 F.Supp.3d 666, 671 (N.D. Ill. 2016)(in-house counsel filed false declaration in support of position advocated by employer).

What documents were destroyed? When? By whom? Why? If there was some "standard practice," what was it? To make matters worse, as already noted, this excuse comes very late in the game. If GM was really meeting and conferring in good faith as Local Rule 37.2 requires, this ought to have come out months ago. As these sketchy and unsupported claims and excuses accumulate, they do not aid GM's claims in this case.

of unnecessary discovery (and therefore a ready source of threatened discovery) is delving into ten issues when one will be dispositive. A magistrate lacks the authority to carve off the nine unnecessary issues; for all the magistrate knows, the judge may want evidence on any one of them."). And as for GM's unspecified claims of privilege, appropriate objections can be made to questions at the depositions should they actually delve into privileged areas and seek privileged information. Accordingly, this portion of plaintiff's motion is also granted.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 9/10/21

8