UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LKQ CORPORATION, AND KEYSTONE AUTOMOTIVE INDUSTRIES, INC., <br><br> Plaintiffs and Counter-Defendants, <br><br> v. <br><br> GENERAL MOTORS COMPANY, GM GLOBAL TECHNOLOGY OPERATIONS, LLC, AND GENERAL MOTORS, LLC, <br><br> Defendants and Counter-Plaintiffs. | No. 20 C 2753 <br><br> Judge Thomas M. Durkin |

### MEMORANDUM OPINION AND ORDER

LKQ Corporation and Keystone Automotive Industries bring this action seeking a declaratory judgment that LKQ does not infringe on four GM design patents. GM brought a counterclaim alleging that LKQ infringes the four patents. GM seeks leave to amend its infringement contentions to add an additional infringing part. For the reasons that follow, GM's motion, R. 88, is granted.

### Background

LKQ sells various automotive parts such as replacement grilles, fenders, and bumpers. LKQ distributes its parts to third parties and advertises through third-party platforms. Certified Collateral Corporation ("CCC") is one such platform. In March 2013, GM and LKQ entered into a Patent License Agreement ("Agreement") granting LKQ a license to manufacture and sell parts based on certain GM design patents. The Agreement is set to expire in early 2022, so in 2017, the parties began negotiating a new one. Negotiations apparently broke down. LKQ filed this suit on

May 6, 2020, alleging GM's '532, '743, '285, and '825 patents ("challenged patents")—patents not included in the parties' Agreement—are invalid as anticipated or obvious and seeking a declaratory judgment that LKQ is not infringing them. R. 1. GM filed a counterclaim on September 11, 2020, alleging LKQ was infringing the challenged patents. R. 36. Discovery commenced, and GM propounded its first set of requests for production on LKQ. In it, GM defined "Accused Products" as follows:

> "Accused Products" includes at least LKQ part numbers: GM1036176, GM1038243, GM1039243, GM1230456C, GM1230456, and GM1230463, and including any other versions of these products (including but not limited to versions that are the same design or product but correspond to a different year, different orientation (i.e., right versus left), different material, supersession by another part number) that may have been given different LKQ part numbers, and any other LKQ product subsequently accused of infringement in this litigation.

R. 88 at 2. Several of GM's requests for production pertained to the Accused Products, including requests for samples of each Accused Product and documents related to the design of each Accused Product. *Id*. LKQ's responses included only information related to the specific LKQ part numbers named in GM's definition. *Id*.

Relevant to the instant motion, LKQ produced discovery relating to GM1036176, an LKQ part correlating to GM's Cadillac XT5 lower grille and one of the Accused Products. Based on that discovery, GM identified GM1036176 in its January 29, 2021 infringement contentions. GM then learned LKQ may have been selling a variation of the Cadillac XT5 lower grille under a slightly different part number—GM1036175. Just over two weeks after serving its infringement contentions, on February 16, 2021, GM sent a letter to LKQ detailing what GM believed to be deficient production. R. 88 at 3-4. LKQ produced a physical sample of

2

GM1036175 on April 6, 2021. GM prepared amended infringement contentions and filed its motion for leave to file them on April 14, 2021. *Id*.

## Legal Standard

Pursuant to this Court's Scheduling Order, R. 60, the parties may amend their contentions after the initial deadline upon a showing of good cause. To demonstrate good cause to amend infringement or invalidity contentions, a party must demonstrate "that it acted diligently and that the accused infringer would suffer no unfair prejudice if the moving party were permitted to amend." *Peerless Industries, Inc. v. Crimson AV, LLC*, 2013 WL 6197096, at *5 (N.D. Ill. Nov. 27, 2013) (collecting cases). When good cause is shown, courts liberally grant leave to amend. *Thermapure, Inc. v. Giersten Co. of Ill.*, 2012 WL 6196912, at *1 (N.D. Ill. Dec. 11, 2012).

## Analysis

### I. Diligence

GM was diligent in seeking to amend its infringement contentions. GM's broadly worded discovery requests sought to encompass "any other versions" of the named LKQ part numbers. R. 88 at 2. LKQ contends it did not provide, in its responses to the discovery requests, information relating to GM1036175 because it believed it to be outside the scope of discovery. GM points the Court to various district court opinions supporting its argument that, in this scenario, the scope of discovery should not be limited to products identified in the preliminary infringement contentions. *Id*. at n.5 (citing *epicRealm Licensing LLC v. Autoflex Leasing, Inc.*, 2007 WL 2580969, at *3 (E.D. Tex. Aug. 27, 2007); *Honeywall Intern. Inc. v. Acer. America Corp.*, 655 F. Supp. 2d 650, 655 (E.D. Tex. 2009); *Dr. Systems, Inc. v. Fujifilm Medical*

3

*Systems USA, Inc.*, 2008 WL 1734241, at *12-13 (S.D. Cal. Apr. 10, 2008)).[1] The Court generally agrees that GM's discovery request properly included part GM1036175. But regardless of whether LKQ should have earlier provided information regarding the part at issue, GM filed its motion to amend just eight days after LKQ provided it. This prompt course of action, as well as GM's timely attempt to address the alleged deficient production with LKQ (18 days after receiving responses), supports a finding that GM acted with diligence in filing its motion.

LKQ argues GM had the information supporting its proposed infringement amendment as early as March 15, 2019, because GM had access to the CCC platform at that time and the GM1036175 part was on the platform. R. 93 at 4-5. GM sent CCC a letter on March 1, 2019, stating that certain products were available on CCC's platform which infringed GM's intellectual property. R. 96 at 3. Attached to the letter was a list of GM's design patents identifying each patent number and informing CCC whether LKQ had a license for it (as discussed above, LKQ had licenses to sell certain of GM's products, but not all). *Id.* The list then provided the GM part number that corresponded to GM's design patents. *Id.* GM's communication with CCC included

---

[1] LKQ cites a single case from the Northern District of California to support its argument that a discovery request should not include products not at issue in the infringement suit. R. 93 at n.4 (citing *Mediatek v. Freescale Semiconductor, Inc.*, 2013 WL 588760, at *4 (N.D. Cal. 2013)). *Mediatek* involved a court denying a motion to compel discovery responses related to products not specifically identified as accused products in the preliminary infringement contentions. *Mediatek*, 2013 WL 588760, at *1. Unlike here, Mediatek's discovery request only included the numbers of the accused products, not any broader language which may have encompassed related infringing products. *Id.* at *2. The Court held Mediatek needed to first seek leave to amend its infringement contentions to include the new accused products, which is precisely what GM is doing here.

4

only GM identifiers and no LKQ part numbers. On March 4, 2020, CCC (not GM, as argued in LKQ's Response) sent LKQ a letter with a table correlating GM's design patents and part numbers to LKQ's part numbers for parts LKQ sold on the CCC platform. *Id.* at 4. Importantly, CCC uses its own numbering system, not GM's, so the correlations here are made without GM's own part numbers. *Id.* Thus, it was CCC, not GM, that identified the LKQ parts that CCC believed corresponded to GM's design patents, and CCC did not even identify the part GM is now trying to add to its infringement contentions. *Id.*

LKQ's argument that it was GM that linked the patents to their corresponding parts has no support in the record—it was CCC. Similarly, LKQ's argument that GM knew how to determine if third-party parts corresponding to GM parts were being sold is weakened, if not completely negated, by the fact that GM only communicated with CCC using its own patents and part numbers, not any of LKQ's products or part numbers. GM has established that it did not know about GM1036175 in March 2019.

GM has demonstrated its diligence in seeking to amend its infringement contentions, establishing good cause to amend unless the Court finds unfair prejudice to LKQ.

## II.     Unfair Prejudice

In its Response, LKQ conflates the prejudice it may face if its pending motion to supplement invalidity contentions, R. 84, is denied, with the prejudice it may face if GM's instant motion is granted. R. 93 at 10-11. The motions are not related.

5

With regard to the instant motion, LKQ's only argument is that it will have to "re-open document production to search for a new part." *Id.* at 10. This argument is not convincing. *See, e.g., Karl Storz Endoscopy-Am., Inc. v. Stryker*, 2016 WL 2855260, at *9 (N.D. Cal. 2016) ("At bottom, [nonmovant's] prejudice arguments boil down to a complaint that the amendment will cause [nonmovant] to perform more work than it would have to perform otherwise… but that is not prejudice."). The question is "not whether [LKQ] would be required to engage in additional work," but rather, what prejudice "results from the delay in asserting those claims." *Trans Video Elecs, Ltd. V. Sony Elec., Inc.*, 278 F.R.D. 505, 510 n.2 (N.D. Cal. 2011). Here, GM's delay in asserting its claim was one week after receiving a requested sample from LKQ. GM has established that LKQ will not face unfair prejudice.

## Conclusion

For the foregoing reasons, GM's motion to amend its infringement contentions, R. 88, is granted.

ENTERED:

*Thomas M. Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: December 13, 2021