UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LKQ CORPORATION AND KEYSTONE AUTOMOTIVE INDUSTRIES, INC., | No. 20 C 02753 |
| Plaintiffs, | |
| v. | Judge Thomas M. Durkin |
| GENERAL MOTORS COMPANY, GM GLOBAL TECHNOLOGY OPERATIONS, LLC, AND GENERAL MOTORS, LLC, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs LKQ Corporation and Keystone Automotive Industries, Inc. (collectively, "LKQ") sued Defendants (collectively, "GM"), seeking a declaratory judgment that LKQ was not infringing certain GM patents, and GM countersued, claiming that LKQ was infringing those patents. After over a year of highly contested discovery, LKQ now seeks default judgment[1] against GM under Fed. R. Civ. P. 37(b) to sanction GM for its alleged failure to follow a court order regarding discovery. In the alternative, LKQ seeks default judgment against GM or adverse inference instructions under Rule 37(e) for GM's alleged spoliation of evidence. LKQ's motion, R. 212, is denied with further instructions.

---

[1] LKQ seeks either a default judgment that each patent at issue is totally invalid or seeks a more limited default judgment that LKQ did not infringe the patents.

## Background

LKQ, through its subsidiary, Keystone, sells aftermarket automotive replacement parts, including for most makes and models of GM automotives. R. 34 ¶ 20. LKQ and GM had a confidential Design Patent Licensing Agreement under which LKQ held a license to a number of GM design patents in exchange for royalties. *Id.* ¶ 22. The parties' relationship began to deteriorate when, on March 1, 2019, GM sent a letter to Certified Collateral Corporation ("CCC"), a third-party website that carried LKQ products, alleging that certain LKQ aftermarket replacement parts infringed GM patents. *Id.* ¶¶ 26–27. GM again allegedly contacted CCC about the infringing parts in December 2019. *Id.* ¶ 30. In response, CCC sent a letter to LKQ in March 2020, advising it to remove the allegedly offending products from CCC's website and to reach out to GM for further information. *Id.* ¶ 31.

LKQ filed its Complaint in this case on May 6, 2020, seeking a declaratory judgment that it either was not infringing the contested design patents, or that the patents were invalid in the first place, R. 1, while GM counterclaimed that LKQ infringed those same patents. R. 36. One theory of LKQ's invalidity assertion is the on-sale bar defense to patentability. *See* R. 215 at 5. The on-sale bar defense invalidates a patent where the patenting party makes an offer of sale of the invention to a third party more than one year before the patent application filing date (the "pre-critical date"). *See* 35 U.S.C. § 102(a)(1).

Over a year of contentious discovery followed the pleadings, including at least eight discovery motions filed by Plaintiff alone. See R. 68, 99, 110, 101, 111, 112, 113,

114, 115, 116, 150, 151, 152,171, 172, 173, 187, 188, 212, 213. In Magistrate Judge Cole's words, "one could not, without a trial and testimony from all the attorneys involved, get through to what has actually gone on amongst the lawyers in discovery in this case." R. 190.

On September 10, 2021, in resolving one of the discovery motions, Magistrate Judge Cole ordered GM to produce "all documents and things constituting, referring, or relating to communications or contracts with any third-party manufacturers and/or suppliers of any GM part that embodies and/or practices each of the patents-in-suit, relating to any such part, occurring prior to the critical date[2] of each patent-in-suit," and to put forth a good faith effort to retrieve certain development and design documents from one-time GM subsidiary, Opel. R. 146 (the "September 10 Order" or "Order").

LKQ first contends that GM either engaged in spoliation or violated this Order by refusing to produce development and design documents and documentation of communications with Opel relating to the '825 patent for the 2018 Buick Regal hood. Second, LKQ claims that GM violated the Court's Order and engaged in spoliation by deleting responses from third-party Lacks to requests for quotation ("RFQs") relating to the '743 patent for the lower grille of the 2017 Cadillac XT5. Similarly, LKQ alleges GM engaged in sanctionable spoliation of an RFQ and responses to and from third party Norplas regarding the '285 patent for the grille bezel of the 2019 Chevrolet

---

[2] The "critical date" is one year prior to the patent application filing date. 35 U.S.C. § 102.

Camaro. Finally, GM should be sanctioned for violating the September 10 Order, according to LKQ, because GM refuses to produce communications with third party component manufacturers related to the '532 patent for the hood of the 2017 Chevrolet Trax. The Court addresses each argument in turn.

## Legal Standards

Under Federal Rule of Civil Procedure 37(b)(2)(A), sanctions are appropriate when a party "fails to obey an order to provide or permit discovery." Among the remedies the court may fashion are "prohibiting the disobedient party from supporting or opposing designated claims or defenses, . . . dismissing the action or proceeding in whole or in part, . . . [or] rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(ii)-(vi). Trial judges enjoy considerable discretion to fashion sanctions that serve as "both specific and general deterrents." *Charter House Ins. Brokers, Ltd. v. New Hampshire Ins. Co.*, 667 F.2d 600, 605 (7th Cir. 1981). Even though Rule 37(b) does not specify a requisite mental state, "the court must find that the party against whom sanctions are imposed displayed willfulness, bad faith or fault." *In re Golant*, 239 F.3d 931, 936 (7th Cir. 2001); *see also Brown v. Columbia Sussex Corp.*, 664 F.3d 182, 191 (7th Cir. 2011). The facts underlying a district court's decision to grant sanctions need only be established by a preponderance of the evidence. *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 781 (7th Cir. 2016).

Rule 37(e), meanwhile, governs sanctions for spoliation of electronically stored evidence. Available sanctions in response to spoliation include default judgment and

an adverse inference instruction, which allows the court to instruct the jury that it "may or must presume the [missing] information was unfavorable to the party" who destroyed it. Fed. R. Civ. P. 37(e). To find spoliation sanctions appropriate, the Court must determine that: (1) there was a duty to preserve the evidence due to actual or anticipated litigation; (2) the evidence was lost because the party "failed to take reasonable steps to preserve it;" (3) the evidence is unable to be restored or replaced through additional discovery; (4) the party "acted with the intent to deprive [the opposing party] of the information's use in litigation;" and (5) the other party was prejudiced. Fed. R. Civ. P. 37(e); *see DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 977–82 (N.D. Ill. 2021).

The fourth element is key. "[D]estruction of or inability to produce a document, standing alone, does not warrant" a sanction. *Park v. City of Chicago*, 297 F.3d 606, 615 (7th Cir. 2002). Rather, "[t]he crucial element is . . . the reason for the destruction." *Id*. (quoting *S.C. Johnson & Son, Inc. v. Louisville & Nashville R.R. Co.*, 695 F.2d 253, 258 (7th Cir. 1982)). Spoliation sanctions are warranted only where a party destroys the evidence in bad faith, or with the intent to deprive the other party of the information. *See Bracey v. Grondin*, 712 F.3d 1012, 1018–19 (7th Cir. 2013); *In re Text Messaging Antitrust Litig.*, 46 F. Supp. 3d 788, 798 (N.D. Ill. 2014), *aff'd*, 782 F.3d 867 (7th Cir. 2015) (finding that, in the Seventh Circuit, "a showing of bad faith

is required to succeed on a motion requesting an adverse inference [instruction] based on spoliation.").[3]

If the court finds that the party intended to deprive the other party of the use of the information, prejudice is presumed. *See* Fed. R. Civ. P. 37(e), Advisory Committee Notes, 2015, Amendments; *Williams v. Am. Coll. of Educ., Inc.*, No. 16 CV 11746, 2019 WL 4412801, at *10 (N.D. Ill. Sept. 16, 2019). If the court finds no bad faith intent but all the other elements of spoliation have been met, the Court may still order curative measures "no greater than necessary" to cure any prejudice to the other party by the loss of the information. Fed. R. Civ. P. 37(e); *Jones v. Bremen High Sch. Dist. 228*, No. 08 C 3548, 2010 WL 2106640, at *5 (N.D. Ill. May 25, 2010) ("if a lesser sanction can accomplish the same goal, the Court must award the lesser sanction.").

Whether granted under Rule 37(b) or 37(e), default judgment is a "severe penalty" because it "effectively terminates a party's ability to prevail on the merits." *In re Golant*, 239 F.3d at 936. Because "public policy favors decisions being made on the merits," rather than on procedural violations, *DR Distributors*, 513 F. Supp. 3d at 983, and because it is considered a "draconian" measure, the court must be "vigilant" in its consideration of a default judgment sanction. *Maynard v. Nygren*, 332 F.3d 462, 467 (7th Cir. 2003). Thus, this "extreme" sanction should only be

---

[3] The cases cited by LKQ to support its argument that the court may impose sanctions for lesser levels of fault were not decided under Rule 37(e). *See Pillay v. Millard Refrigerated Servs., Inc.*, 2013 WL 2251727, at *4 (N.D. Ill. May 22, 2013); *Marrocco v. General Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992); *Dewan v. Univ. Granite & Marble, Inc.*, 2009 WL 10696069, at *2 (N.D. Ill. Mar. 30, 2009).

imposed "when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailable." *Rice v. City of Chicago*, 333 F.3d 780, 785–86 (7th Cir. 2003) (quoting *Grun v. Pneumo Abex Corp.*, 163 F.3d 411, 425 (7th Cir. 1998).

## Discussion

### I.  Documents Regarding the '825 Patent

Niels Loeb, an employee of GM subsidiary Opel, completed the design work for the Buick Regal hood encompassed by the '825 patent. R. 155 ¶ 3. After he completed that work, GM sold its Opel division to Peugeot S.A. ("Peugeot") in March 2017. *Id.* GM's purchase agreement with Peugeot provided GM with a contractual right to "reasonable access" of records. R. 146 at 2. Mr. Loeb continued to work for Opel/Peugeot after the sale.

In this litigation, GM produced some documents in response to LKQ's requests for documents "generally relating to the development of the vehicle and the design that led to the '825 patent"—in particular, image files, consumer clinic studies, and development records. R. 230-2. But LKQ claimed there were many more documents relating to the development and design of the hood that GM had not produced, including manufacturing cost documents. *See* R. 216-2 at 31:11–19 (GM's 30(b)(6) witness stated, "Opel was a GM entity, so I suspect that there may have been information regarding the costs of making the goods . . . [T]here would have been likely documentation as to the cost of manufacturing . . . ."). GM asserted that the additional documents LKQ sought resided with Opel, that its efforts to retrieve those

documents from Opel had been exhausted, and that it lacked a contractual right to the documents. R. 113-4; R. 130 at 5. In the September 10 Order, Magistrate Judge Cole disagreed, pointing out GM's contractual right to reasonable access of records. R. 146 at 3–4. Further, he found there was "certainly no evidence" that GM had exhausted its efforts to retrieve the documents from Opel, and ordered GM "to make a concerted, good faith effort to retrieve the documents." *Id.* Magistrate Judge Cole further ordered GM to "report those efforts back to plaintiff and the court in two weeks." *Id.* at 4.

In its report, GM detailed and attached proof of ongoing email and phone conversations between GM and Opel. R. 155-1. In an email sent October 7, 2021, Opel/Peugeot's attorney stated that "it appears that at the moment of the sale of OPEL by GM, GM kept all documentation (through 2DAM tool for all visuals and sketches ad [sic] 3Data). Should Opel would [sic] like to keep some relevant documentation, it had to ask a specific authorization to GM to do so." R. 216-1 at 1. GM claims it has produced all design and development documents in its system. GM also states that, to the extent any design documents are missing, GM does not know where they are or does not have access to them because they are Mr. Loeb's personal files. GM's document retention policy requires it to retain copies of documentation of the development of contracts for the purchase of parts from manufacturers for the life of the part plus six or ten years. R. 216-2 at 130:15, 149:17–151:24, 163:11–17; R. 216-9.

GM hints that it does have other additional documents regarding the Buick Regal hood, including communications to and from Opel (more specifically, a request for quotation ("RFQ"), or a document seeking quotes for manufacture of certain parts). *See, e.g.*, R. 216-2 at 27:22–31:19.[4] LKQ claims that, by withholding these documents, GM is also violating the Order's provision requiring GM to produce documentation of pre-critical date communications with third-party vendors.

### a. Analysis

#### i. Sanctions Not Justified Due to the Loss of the Development and Design Documents

The Court declines to impose sanctions under Rule 37(b) or 37(e) as to the Opel development and design documents. GM has made a good faith effort to locate them, and there is no evidence that GM has engaged in deception. There also is no evidence of spoliation, as LKQ cannot show that GM had a duty to preserve the documents, nor that GM intentionally destroyed them in bad faith.

First, LKQ asserts that GM should be sanctioned because it has violated the September 10 Order by not producing the design and development documents for the 2018 Buick Regal hood that LKQ seeks. But the Order does not require GM to produce documents it cannot find. Rather, so long as GM made "a concerted, good faith effort to retrieve" the documents, it is not in violation of the Order. R. 146 at 4. The evidence shows that one of GM's attorneys diligently inquired with Opel/Peugeot's counsel via

---

[4] GM's 30(b)(6) witness stated that "when Opel was divested . . . , there may have been documentation or discussion that . . . would be a request . . . I know we received a response for pricing for this product on July 25, 2017 . . . . And it was I believe in email form.").

email at least ten times, and via phone at least once. R. 216-1. He confirmed and clarified multiple times that Opel did not have the documents. *See, e.g., id.* at 4 ("I wanted to confirm . . . do you mean that Opel does not have the requested documentation in its possession?"). GM's attorney also detailed steps he took to attempt to locate any further pre-critical date documents within GM. R. 177 ¶¶ 5–7. This constitutes a good faith effort to comply with the September 10 Order.

But LKQ argues that the statement from Opel/Peugeot's counsel that GM kept all documentation at the time of sale shows that GM actually knows where the relevant documents are and is lying about its good faith efforts to find them. It is, of course, concerning that GM told the Court that Opel has additional documents, while Opel claims that GM has them. And it also seems reasonably likely from the non-exclusive language of the October 7, 2021 email that GM originally kept more than just the drawing files it already produced in this action. R. 216-1 at 1 ("GM kept all documentation (through 2DAM tool for all visuals and sketches . . .)").

Nevertheless, the Court does not find GM engaged in willful deception. Rather, the communications and evidence in the record indicate that there is confusion between GM and Opel as to what documents were created and who kept them after Opel's spin-off from GM. Without Opel and Mr. Loeb's cooperation, we may never receive clarification.[5] And this confusion is not surprising given the likely-chaotic

---

[5] Opel and Mr. Loeb are both European and, as LKQ learned, outside the subpoena power of this Court.

circumstances surrounding a multi-billion-dollar divestiture.[6] LKQ's conclusory statements to the contrary, there is not enough evidence that GM intentionally or nefariously withheld any design documents to justify the "draconian" sanction of default judgment. *Norman-Nunnery*, 625 F.3d 422, 429–30 (7th Cir. 2010).

Nor does the court find that sanctionable spoliation of the development and design documents has occurred. Chiefly, LKQ has not proved that GM had a duty to preserve the documents in anticipation of litigation. LKQ claims that GM's internal document retention policy requires it to preserve evidence for a certain number of years, and that, under *Park v. City of Chicago*, the violation of this policy automatically creates a presumption that the evidence was adverse. 297 F.3d 606, 615 (7th Cir. 2002). But a document retention policy is only a relevant consideration where litigation *is already anticipated*, and the destruction was in bad faith. *See Latimore v. Citibank Fed. Sav. Bank*, 151 F.3d 712, 716 (7th Cir. 1998) ("inadvertent failure to comply with [document retention] regulation" did not require adverse inference sanction); *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008) ("courts have found a spoliation sanction to be proper only where a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent.").

LKQ here has provided no evidence that GM had a duty to preserve the documents because it anticipated litigation. At the time the documents were lost or

---

[6] *GM to Sell Opel to Peugeot for $2.33 Billion*, Car & Bike Mag. (Mar. 6, 2017, 7:04 PM), https://www.carandbike.com/news/gm-to-sell-opel-to-peugeot-for-2-33-billion-1666748.

destroyed—likely in 2017—this lawsuit could not have been anticipated. LKQ has also not provided any evidence that GM intentionally destroyed the documents in a bad faith attempt to deprive LKQ of any information. Rather, as discussed, LKQ can only point to confusion between GM and Opel as to what documents exist and who possesses them. *See Park*, 297 F.3d at 615–16 (district court's refusal to apply adverse inference was reasonable where there was no evidence of bad faith). Thus, the Court denies LKQ's motion for sanctions as to the development and design documents.

### ii. Sanctions Not Justified as to Withholding of Communications with Opel

Alternatively, LKQ argues that GM should be sanctioned for violating the part of the September 10 Order which mandates the production of communications with third party vendors because GM has refused to produce documentation of its communications with Opel, including a post-critical date RFQ and response from Opel. GM has continued to maintain that because Opel was a wholly-owned GM subsidiary, "there simply [are] no relevant documents . . . [T]he parts were manufactured by GM, not a third party, and no other third-parties were quoted." R. 190 at 12. It is true that the September 10 Order mandated that GM turn over documents in response to LKQ's request for any communications "with any *third-party* manufacturers or suppliers . . . *occurring prior to the critical date of each patent-in-suit*." R. 146 at 5–6 (emphasis added). And it was only *after* the critical date of the '846 patent that GM apparently sent the RFQ and began purchasing the hood from Opel as a third party. R. 177 ¶¶ 5–7. Therefore, GM argues, communications with Opel before the critical date are not encompassed by the September 10 Order because

12

Opel was not a third party at that time. And communications after the critical date are expressly excluded by the Order.

So long as GM is not using these arguments to conceal any development and design documents[7] (which GM has clearly been ordered to produce regardless of whether Opel was or was not a third party at the time), GM's reading of the September 10 Order, though somewhat narrow, is at least reasonable. The Court will not impose sanctions on a party due to its reasonable interpretation of a court order. To the extent LKQ believes its reading of the September 10 Order is the right one, it can file a motion with Magistrate Judge Cole for further clarification of that Order.

## II. Documents Regarding the '743 Patent

The 2017 Cadillac XT5 grille that is governed by the '743 patent is manufactured for GM by third-party Lacks Enterprises ("Lacks"). LKQ claims that, prior to the critical date of the '743 patent, GM sent requests for quotations ("RFQs"), which are documents seeking quotes for the manufacture of the grille, to Lacks, and that Lacks responded with price quotations. According to LKQ, the RFQs and responses may show that GM made a pre-critical date invalidating offer for sale of the grille, which supports LKQ's on-sale bar defense to the '743 patent.

GM has admitted it sent pre-critical date RFQs to Lacks regarding the grille's manufacture and that it received responses from Lacks in return. R. 216-2 at 66:2–

---

[7] LKQ argues that this is exactly what GM is doing as to the manufacturing cost documents. But GM's deponent only speculated that such documents existed at one time, and there is no evidence that GM is currently withholding them. Rather, these documents seem to be encompassed in the earlier-discussed missing development and design documents.

70:2; 90:24–92:13. GM claims that it searched diligently and produced the only relevant document in its system, and that this is the RFQ. R. 216-4; R. 177 ¶¶ 8–13. However, LKQ alleges it is missing Lacks' responses. R. 177 ¶ 13. Lacks admitted to the existence of the RFQs and responses via third party discovery, but it also has not produced the responses. R. 216-2 at 25:11–26:4. GM says that the responses were not properly entered into its system and, to the extent any documents were deleted, it happened in March 2019 when the employee who oversaw the part left GM and his emails and computer were routinely wiped. R. 230-3 at 34:3–14, 54:14–55:4.

### a. Analysis

#### i. Default Judgment and Adverse Inference Sanctions Not Justified

The Court declines to grant sanctions under Rule 37(b) for violating a court order as to the Lacks documents because GM cannot find the missing documents. And despite unreasonably failing to preserve the documents when it had a duty to do so, Rule 37(e) sanctions are not justified because there is no evidence that GM acted with anything more than gross negligence. The Court will, however, consider alternative jury instructions to alleviate any prejudice to LKQ.

First, GM is not violating the September 10 Order by failing to produce the Lacks RFQ responses. GM has described its diligent search efforts to attempt to find the documents, and that the documents were not in its system. GM cannot be sanctioned for failing to produce documents that no longer exist. *See Little v. JB Pritzker for Governor*, No. 18 C 6954, 2020 WL 13189999, at *2 (N.D. Ill. Mar. 26, 2020) (quoting *Sonnino v. Univ. Kansas Hosp. Auth.*, 220 F.R.D. 633, 640 (D. Kan.

2004) ("[A] Court cannot compel a party to produce documents that do not exist or that are not in that party's possession, custody, or control."). Thus, GM's failure to produce the RFQ responses after entry of the September 10 Order does not merit a default judgment under Rule 37(b).

Neither does GM's conduct merit sanctions under Rule 37(e) for spoliation. True, the Court agrees with LKQ that GM had a duty to preserve evidence at the time GM allegedly deleted the responses. Though the Complaint in this case was filed in May 2020, GM sent the letter alleging that LKQ was infringing its patents on March 1, 2019, before the employee in charge of the grille encompassed by the '743 patent left GM. *See In re Kmart Corp.*, 371 B.R. 823, 842 (Bankr. N.D. Ill. 2007) (quoting *Cohn v. Taco Bell Corp.,* 1995 WL 519968, at *5 (N.D. Ill. August 30, 1995)) ("[T]he obligation to preserve evidence may arise prior to the filing of a complaint where a party is on notice that litigation is likely to commence."); *Trask-Morton*, 534 F.3d at 681 (demand letter from an attorney prior to litigation triggered the duty to preserve evidence). GM's claim that it did not anticipate litigation in March 2019 is not believable because its own conduct—sending warning letters to a third party contending that LKQ was infringing the '743 patent—should have reasonably put it on notice of anticipated litigation (whether initiated by itself or by LKQ) regarding the infringement of that patent as of March 1, 2019.

Further, GM acted unreasonably in not preserving the RFQ responses as potentially relevant evidence. "The duty to preserve evidence includes any relevant evidence over which the nonpreserving entity had control and reasonably knew or

15

could reasonably foresee was material to a potential legal action." *China Ocean Shipping (Grp.) Co. v. Simone Metals Inc.*, No. 97 C 2694, 1999 WL 966443, at *3 (N.D. Ill. Sept. 30, 1999) (citing *Langley v. Union Elec. Co.,* 107 F.3d 510, 514 (7th Cir 1997)). Indeed, the scope of the duty to preserve is as broad as whatever discovery is permissible under the federal rules. *China Ocean Shipping*, 1999 WL 966443, at *3. Here, the RFQ responses were pre-critical date offers from a third party to manufacture the part governed by the patent at issue. These documents were at one time in the custody and control of the GM employee in charge of the part. And GM was already alleging at the time of deletion that LKQ was infringing the patent. Thus, the employee's documents were foreseeably relevant to patent litigation such that it was unreasonable to not place those employee's documents under a litigation hold.

In addition, the RFQ responses cannot be restored or replaced through additional discovery. LKQ has exhausted third party discovery with Lacks, and GM has detailed that its attempts to locate the documents internally have been fruitless.

However, despite the duty to preserve, the evidence does not show that GM acted in bad faith by deleting the RFQ responses with the intent to deprive LKQ of the information. LKQ points to GM's deletion of the documents in contravention of its own internal document retention policies as evidence of bad faith. It is unclear whether that is true. On one hand, GM's document retention policy is to preserve documents that relate to the development of contracts for the purchase of parts for the life of the part plus six or ten years. *See* R. 216-2 at 130:15, 149:17–151:24, 163:11–17; R. 216-9. On the other hand, it apparently is also GM's policy to

automatically wipe an employee's computer files and emails when the person departs GM. R. 216-2 at 37:13–17. GM offers no explanation of how these policies can be reconciled.

Either way, LKQ has not carried its burden to prove that the deletion of the employee's emails and files was an intentional act aimed at depriving LKQ of information. There is no indication that GM's policy of wiping outgoing employees' computer files and emails is intended to destroy relevant evidence in future lawsuits. *See, e.g., Jones*, 2010 WL 2106640, at *8 (deletion of emails in violation of document retention policy, though grossly negligent given the defendant's knowledge of possible litigation, were not part of a deliberate effort to conceal harmful evidence); *Latimore,* 151 F.3d at 716 (where party destroyed files inadvertently in violation of document retention regulation, presumption of bad faith did not attach). Given its letters alleging that LKQ was infringing the '743 patent, GM should have implemented a litigation hold and was grossly negligent in not doing so. But evidence of bad faith is required for the Court to enter a default judgment or give an adverse inference instruction under Rule 37(e). Here, there is no evidence that GM's actions were anything more than a negligently-applied routine policy of wiping ex-employees' emails and files when they leave GM. Thus, this Court will not impose the harsh sanctions of default judgment or adverse inference instructions as to the Lacks RFQ responses.

### ii. Lesser Sanctions May Be Appropriate to Alleviate Prejudice to LKQ

It may be necessary to explain to a jury that LKQ is missing certain evidence because of GM's negligent conduct. *Langley*, 107 F.3d at 515 ("Substantive prejudice occurs when the lost evidence prevents the other party the use of 'crucial' evidence to their underlying claim.").

At this juncture, LKQ has not explained why it is prejudiced by the deletion of the RFQ responses. LKQ has the RFQ and acknowledgments by both GM and Lacks that Lacks sent responses. This may allow LKQ to assert its on-sale bar defense. But, if LKQ can show that it is substantively prejudiced by the loss of the RFQ responses, it may request a jury instruction explaining that the responses are missing because of GM's negligence. *YCB Int'l, Inc. v. UCF Trading Co.*, No. 09-CV-7221, 2012 WL 3069683, at *15 (N.D. Ill. June 12, 2012), report and recommendation adopted, 2012 WL 3069526 (N.D. Ill. July 25, 2012) (where there was evidence of gross negligence but not bad faith, court instructed jury that defendant had deleted documents in violation of document retention policy, but declined to give adverse inference instruction); *Jones*, 2010 WL 2106640, at *9 (same); *Danis*, 2000 WL 1694325, at *6 (where party destroyed documents in violation of Federal Rules but did so unintentionally, court instructed jury that party failed to preserve evidence); *see also DR Distributors*, 513 F. Supp. 3d at 983 (where reasonable minds could differ as to whether evidence was destroyed intentionally or not, the court left it to the jury to decide).

### III.    Documents Regarding the '285 Patent

The 2019 Chevrolet Camaro grille bezel encompassed by the '285 patent is manufactured by Norplas Industries (a division of Magna International) ("Norplas"). Before the critical date of the '285 patent, GM sent an RFQ to Norplas, who responded with two price quotations. Like the Lacks RFQ and responses, LKQ claims the Norplas RFQ and responses support its on-sale bar defense.

When LKQ initially requested pre-critical date exchanges between GM and Norplas, GM alleged that there were none and that production was complete. R. 214-11; 216-5 at 1. But LKQ later received documents from Norplas in response to a subpoena that indicated Norplas had received an RFQ from GM and had responded with two price quotations prior to the critical date. R. 216-11 at ¶¶ 6–8. GM later admitted that it sent an RFQ and received price quotations from Norplas, but that it had searched for and could not find the documents. R. 216-2 at 35:16–39:15. After the September 10 Order mandated GM to produce vendor communications, GM produced two amendments to purchase contracts with Norplas for the grille bezel covered by the patent, but it has not produced the actual contract that was amended nor the RFQ or responses.

GM states that it has located no further responsive documents. R. 177 ¶¶ 14–17; R. 178 ¶¶ 12–13. Like the Lacks documents, GM speculates that the reason it cannot find any further communications with Norplas is because the employee who oversaw this part left GM in March 2020, and that his emails and computer were wiped. R. 230-3 at 34:15, 54:15. However, GM's deponent testified they did not know

why the Norplas documents were unavailable. R. 214-2 at 39:6–9, 196:9–15. The deponent stated that "[i]nasmuch as the RFQ was left on the computer of the [employee] when he departed, then it would have been . . . destroyed with the retention policies, but . . . I can't state that with certainty." *Id.* at 36:23–37:3.

### a. Analysis

The Court's analysis here is nearly identical to its analysis of the destruction of the Lacks RFQ responses. First, GM is not violating the September 10 Order by failing to produce the Norplas RFQ and responses. And second, sanctions under 37(e) are not appropriate because of a lack of evidence of bad faith. But because GM was grossly negligent in allowing the documents to be lost or deleted when it had notice of potential litigation, a tailored jury instruction may be warranted.

First, GM has described its diligent search efforts to attempt to find the documents, and that the documents were not in its system. R. 177 ¶ 14; R. 178 ¶¶ 12–13. LKQ, however, argues that GM should be sanctioned because it originally stated that there were no pre-critical date communications between it and Norplas, and that the Norplas subpoena responses proved this untrue. GM claims it was telling the truth at the time—based on its search, it could not find any communications in its system. LKQ also points out GM's delay in producing the contract amendments. Though GM may have delayed or perhaps applied criteria that were too narrow in searching for responsive documents, there is not enough of a record of delay or contumacious conduct to support a default judgment. *Brown*, 664 F.3d at 191. And

again, GM cannot be sanctioned under Rule 37(b) for failing to produce documents that no longer exist.

Similarly, GM's loss or destruction of the Norplas RFQ and responses does not merit default judgment or an adverse inference instruction under Rule 37(e) for spoliation. GM does not know what happened to the documents and only speculates that they may have been on the computer of the employee who left GM in March 2020. If true, GM had a duty to preserve evidence at the time of the alleged deletion—at that point, GM had been alleging LKQ was infringing the '285 patent for a year and had taken multiple steps to stop LKQ, including sending letters to and meeting with a third-party distributor and discussing the infringement with LKQ itself. Even more so than the Lacks documents, GM should have been on notice of likely litigation in March 2020 and should have preserved relevant evidence related to the manufacture of the '285 patent part, like the RFQ and responses. *See Does 1-5 v. Cty. of Chicago*, 2019 WL 2994532, at *4. These documents cannot be restored or replaced through additional discovery, as Norplas has not produced them, and GM has exhausted its search.

But, like the Lacks RFQ responses, the evidence does not show that GM acted with a bad faith intent when it lost or destroyed the Norplas RFQ and responses. Though LKQ argues the documents should have been retained under GM's document retention policy, there is no proof that the loss or deletion of the documents was anything more than inadvertent. Thus, GM was grossly negligent, given its notice of

potential litigation, but there is no evidence of bad faith to support a default judgment or adverse inference instruction sanction. *See Jones*, 2010 WL 2106640, at *8.

And again, LKQ has not discussed why the exact language of the RFQ and responses is "crucial" to LKQ's on-sale bar defense, *Langley*, 107 F.3d at 515. Indeed, the fact that GM sent a pre-critical date RFQ to Norplas and that it received responses may allow for LKQ to assert an on-sale bar defense. But if LKQ can show substantive prejudice, it may request a jury instruction explaining that the Norplas RFQ and responses are missing because of GM's negligence.

## IV.    Documents Regarding the '532 Patent

The 2017 Chevrolet Trax hood governed by the '532 patent is assembled by GM in its San Luis Potosi facility. R. 178 at 4. GM has asserted that it has never submitted RFQs to any third party regarding the manufacture of the hood as a whole. *Id*. However, LKQ alleges that at least three third-party manufacturers make component parts GM uses to produce this hood: NS Auto Tech makes the reinforcement parts for the front panel of the hood, Pyeong Hwa produces latches, and Hankook Pelzer manufactures the insulators. R. 216-12. LKQ claims that, under the September 10 Order, it is entitled to any pre-critical date RFQs for these component parts. LKQ also claims that GM's deponents have refused to testify regarding the design and development of these component parts and any vendor communications regarding them. R. 216-2 at 21:6–23:23; R. 216-8 at 140:1–20. During discovery, the parties disagreed over whether these documents should have been produced, but LKQ never filed a motion to compel. R. 230-4.

### a. Analysis

LKQ's arguments here are better suited for a motion to compel, which LKQ had ample opportunity to file. It now alleges for the first time before this Court that GM should have produced communications with component parts manufacturers. But the standard for levying sanctions under Rule 37(b) asks whether GM acted in bad faith by refusing to comply with an existing court order. The September 10 Order mandated that GM produce documents in response to a request for all communications "with any third-party manufacturers and/or suppliers of any GM part *that embodies and/or practices each of the patents-in-suit . . . .*" R. 146 at 5 (cleaned up) (emphasis added). The component parts are not visible or labeled on the '532 patent application. R. 216-6. GM's position, then, that the component parts do not "embody and/or practice" the patent is at least reasonable. The Court will not impose harsh sanctions on a party due to its reasonable interpretation of a Court Order. And again, to the extent LKQ believes its reading of the September 10 Order is the right one, it can file a motion for further clarification before Magistrate Judge Cole.

### Conclusion

In sum, this Court declines to grant default judgment against GM as to all four patents. It also declines to give an adverse inference instruction as a sanction as to the categories of documents LKQ claims GM is withholding or deleted. LKQ's request for attorney's fees and costs is thus denied. However, if LKQ can show substantive prejudice because of the missing Lacks and Norplas RFQs and/or responses, this

Court would consider a jury instruction narrowly tailored to alleviate that prejudice. LKQ may include a motion for such an instruction in its motions in limine prior to trial.

ENTERED:

Honorable Thomas M. Durkin

United States District Judge

Dated: October 25, 2022